563 A.2d 1182

Charles F. KRAUSE; Stuart H. Speiser; Donald W. Madole; John A. Krause, Trustee for Joan A. Krause, Kent C. Krause, Paul E. Krause and Jennifer A. Krause; Eric R. Williams; Timothy H. Williams; John F. Andrews, Trustee for Steven N. Williams and Deborah R. Williams; Dorothy R. Williams; L. Stanton Williams; Richard W. Reed, Jr., Trustee for Christopher B. Reed, Lucinda M. Reed and Melissa M. Reed; Malcolm W. Reed, Jr.; Mary R. Hirt and John W. Hirt, Trustees for Marcia H. Reigeluth, Carolyn S. Hirt, Susan D. Hirt and Constance V. Hirt; Mary R. Hirt; Suzanne K. Reed; Garnet R. Reed; Nancy R. Atkinson; Dorothy V. Reed; Richard W. Reed, Jr.; Robert M. Reed; Phyllis R. Andrews and John F. Andrews, Trustees for John R. Andrews, Judith F. Andrews and Karen W. Andrews; John F. Andrews; Phyllis R. Andrews; Carolyn C. Reed, Individually and as Custodian for David M. Reed, Jr., Douglas Reed and Jennifer S. Reed; William M. Furey; Fanbank & Company, a Massachusetts State Bank; Elizabeth R. Furey; Richgarn Corp., a Nevada Corp.; Garnet Corp., a Nevada Corp.; MWR Corp., a Nevada Corp.; Co-Alco Corp., a Nevada Corp.; David M. Reed; and D.C.R. Enterprises, a Delaware Corp., Appellants,

v.

GREAT LAKES HOLDINGS, INC., and Calvert Coal Inc.

v.

PENN POCAHONTAS COAL CO., a Delaware Corporation.

Superior Court of Pennsylvania.

Argued April 26, 1989.

Filed Aug. 1, 1989.

William M. Wycoff, Pittsburgh, for appellants.

Roger L. Longtin, Johnstown, for Calvert Coal Inc., appellee.

Before MONTEMURO, JOHNSON and CERCONE, JJ.

CERCONE, Judge:

This case involves consolidated appeals from two orders of the Court of Common Pleas of Somerset County. On October 3, 1988, appellants' motion to amend their complaint was denied. On the same date, the lower court granted appellees' motion for summary judgment on Counts II, III, IV and V of the complaint. We affirm in part and reverse in part.

This action was commenced by appellants, former stockholders in a liquidated corporation, Environmental Power, Ltd. (EPL) on November 10, 1983. Appellants named Penn

Pocahontas Coal Company (PPC) as defendant in the action. In their complaint, appellants alleged that PPC had defaulted on an installment note in which PPC had promised to pay a certain principal amount to agents of appellants. Appellants further alleged that PPC and three other corporations (Calvert Coal Company, Newcoal Newco, Inc., and G.L. Corporation) had entered into a written agreement with Richard W. Reed and D.G. Sisterson & Company, as agents for the former stockholders of EPL, on February 8, 1980, which provided for the rescheduling of payments due from PPC under the installment note. Appellants complained that PPC had failed to make the rescheduled payments and therefore was in default under the terms of the 1980 agreement and demanded judgment on the note.

On May 15, 1984, appellants moved for summary judgment on the complaint. Prior to the lower court's decision on that motion, a petition to intervene was filed by GL Corporation, a predecessor corporation to appellee Great Lakes Holdings, Inc. (GL).[1] GL and Calvert Coal Company alleged that they were parties to the February 8, 1980 agreement, and that they had made advances to PPC which had not been repaid, alleging that according to the terms of the 1980 agreement, PPC's indebtedness to GL took priority over PPC's indebtedness to appellants on the installment note. Therefore, GL and Calvert requested permission to intervene.

On August 31, 1984, the lower court granted GL and Calvert's petition to intervene and denied appellants' motion for summary judgment. In denying the summary judgment motion, the lower court held that "[t]he pleadings and affidavits in this case present a genuine conflict of fact and law as to the proper interpretation of the February 8, 1980 agreement." The lower court concluded that it could not grant summary judgment "[w]ithout more evidence as to the true intent of the parties to that agreement...." On May 8, 1985, GL and Calvert, appellees herein, filed a

1. The petition to intervene was amended to substitute Great Lakes Holdings, Inc. as petitioner and to join as petitioner Calvert Coal Company.

complaint against appellants and PPC, in which they reiterated the allegations contained in the petition to intervene. Appellees requested that the lower court declare PPC's debt on the advances made by them to PPC as having priority over PPC's debt to appellants on the installment note.

Appellants then filed an amended complaint in September, 1985. The amended complaint was filed "to include claims against the intervening plaintiffs...." Count I of the amended complaint essentially reiterated the allegations against PPC as set forth in the original complaint. Count II was directed against GL and alleged that Jay Pritzker, agent of GL, entered into an oral agreement with appellants on November 15, 1979, under which GL agreed to assume responsibility for payment of PPC's obligations under the installment note in consideration for which appellants agreed to accept a suspension of payments. Appellants further alleged in Count II that although they had performed their obligations under the oral agreement, GL had failed to pay the outstanding debt on the note. In Count III of the amended complaint, appellants alleged that "the representations and promises made by GL Corporation in its oral agreement with [appellants]" were false, that GL knew them to be false at the time the representations were made, and that GL made such representations for the purpose of inducing appellants not to take immediate legal action against PPC. Further, appellants alleged that they relied on GL's representations on February 8, 1980 when they entered into the written agreement rescheduling PPC's payments on the note. Appellants also alleged in Count III that GL "shifted assets and diverted corporate opportunities from PPC." [2]

Counts IV and V of the amended complaint were brought against PPC, GL and Calvert Coal as "Debtors" under the February 8, 1980 agreement. In Count IV, appellants alleged that by executing the agreement, the "Debtors" were liable to appellants as sureties under 8 P.S. § 1. In Count

2. The "diversion of corporate opportunities" theories alleged in Counts III and V of the complaint have not been raised on appeal.

V, the allegation was that the "Debtors" had made false representations in the 1980 agreement and at the time of its execution. Appellants also alleged that the "Debtors" had shifted assets and diverted corporate opportunities from PPC.

After a period of discovery, appellees (intervening plaintiffs), filed a motion for summary judgment as to Counts II, III, IV, and V of appellants' amended complaint. Prior to the disposition of this motion, appellants moved to amend the complaint to permit the filing of a second amended complaint. Appellants stated that the basis for the motion to amend was that during the course of discovery, additional information had been obtained which "demonstrated the existence of additional causes of action."

The proposed second amended complaint alleged a "[s]econd cause of action against defendant Great Lakes Holdings, Inc." In the second cause of action against GL, appellants alleged that "GL has used its control and domination over PPC to defraud [appellants]...." Further, appellants alleged that PPC had been acquired "with the specific intent by Defendant GL's principals to take advantage of PPC's corporate opportunities...." Appellants also set forth in their proposed second amended complaint a third cause of action against Calvert Coal Company and GL "for equitable subordination." Appellants alleged that certain loans to PPC by GL and Calvert "were made by entities in the nature of proprietors rather than creditors," and that GL and Calvert had breached their fiduciary duty to PPC. Appellants requested relief in the form of disallowance of the loans made by GL and Calvert to PPC as contributions to capital, or, in the alternative, that the court exercise its equitable powers to subordinate such loans in favor of appellants.

The lower court granted appellees' motion for summary judgment as to Counts II, III, IV and V of the amended complaint and denied appellant's motion for leave to amend. Appellants have timely appealed the orders of the lower court.

We will first address the lower court's grant of summary judgment in favor of appellees.[3] A motion for summary judgment may be granted only if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Pa.R. C.P., Rule 1035(b), 42 Pa.C.S.A. Summary judgment may be entered only in those cases which are clear and free from doubt. *Young v. Eastern Engineering and Elevator Company, Inc.,* 381 Pa.Super. 428, 554 A.2d 77 (1989).

> In passing on a motion for summary judgment, the court must examine the record in the light most favorable to the nonmoving party.... It is not the court's function to decide issues of fact but solely to determine if there is an issue of fact to be tried.... Any doubt must be resolved against the moving party.... The court, in ruling on a motion for summary judgment, must ignore controverted facts contained in the pleadings.... The court must restrict its review to the material authorized by Rule 1035 to be filed in support of and in opposition to the motion for summary judgment and *only* those allegations in the pleadings that are uncontroverted.

*Washington Federal Savings and Loan Association v. Stein,* 357 Pa.Super. 286, 515 A.2d 980, 981 (1986) (citations omitted) (emphasis in original).

 Appellants first contend that the lower court erred in dismissing Count II of the amended complaint because there are genuine issues of material fact as to whether the parties entered into an enforceable oral agreement on November 15, 1979. It is established law in this Commonwealth that parties may bind themselves contractually prior to the execution of a written document through mutual manifestations of assent, even where a later formal doc-

---

**3.** The lower court's order granting summary judgment is an appealable order. *See Praisner v. Stockner,* 313 Pa.Super. 332, 459 A.2d 1255 (1983) (summary judgment as to certain counts of a multi-count complaint was an appealable order where those counts contain separate causes of action and the judgments effectively precluded plaintiffs from further pursuing the merits of those causes of action).

ument is contemplated. *George W. Kistler, Inc. v. O'Brien,* 464 Pa. 475, 347 A.2d 311 (1975). Where the parties have settled upon the essential terms of the contract, and the only remaining act to be done is the formalization of the agreement, the latter is not inconsistent with the existence of a present contract. *Field v. Golden Triangle Broadcasting, Inc.,* 451 Pa. 410, 305 A.2d 689 (1973), *cert. denied* 414 U.S. 1158, 94 S.Ct. 916, 39 L.Ed.2d 110 (1974). If the parties agree on essential terms and intend them to be binding, a contract is formed even though the parties intend to adopt a formal document with additional terms at a later date. *Johnston v. Johnston,* 346 Pa.Super. 427, 499 A.2d 1074 (1985). However, where the parties contemplate that their agreement cannot be considered complete before it is reduced to writing, no contract exists until the execution of the writing. *Essner v. Shoemaker,* 393 Pa. 422, 143 A.2d 364 (1958). The intent of the parties is a question of fact to be determined by the factfinder. *Johnston v. Johnston, supra* 346 Pa.Super. at 431, 499 A.2d at 1076.

The lower court determined that the evidence submitted in connection with the appellees' motion for summary judgment did not demonstrate the existence of an enforceable oral contract because the parties had not manifested an intent to enter into a present contract on November 15, 1979. In reaching this determination, the lower court relied upon the deposition of Richard W. Reed, who represented appellants at the November 15, 1979 meeting, the affidavit of D.M. Madole, who also represented appellants at the meeting, and the deposition of Jay A. Pritzker, who attended the meeting on behalf of GL. The lower court also relied upon certain documentary evidence, including a "recap" of the November, 1979 meeting written by Richard Reed, and a letter dated November 26, 1979, from Allen Palles, an employee of the Marmon Group, a company associated with the Pritzker interests, to Richard Reed concerning his discussion with Jay Pritzker.

We have reviewed this evidence as well as other relevant portions of the record and find the evidence insufficient to sustain the lower court's grant of summary judgment to Count II of appellant's amended complaint. We have several reasons for this finding. First, the affidavit of D.M. Madole does not, in our view, "merely corroborate" testimony that the only agreement between the parties was the written agreement of February 8, 1980. The lower court's conclusion concerning the Madole affidavit is not the only conclusion which can be drawn from a reading of that document. On the contrary, the affidavit can quite logically be read to infer that an oral agreement between the parties was entered into on November 15, 1979, which was followed by a written memorial of that agreement on February 8, 1980. As Mr. Madole stated in his affidavit, "[s]ubsequent to November 15, 1979, attorneys for the Pritzker interests and for EPL drafted an agreement which comported with the agreement of November 15, 1979."

Nor do we agree with the lower court's conclusions regarding the "recap" of the November meeting by Richard Reed or the letter from Allen Palles to him on November 26, 1979. The documents are neutral and ambiguous; they do not conclusively support the inference drawn by the lower court that no oral contract was entered into in November 1979 by the principals present on that date.

The lower court also indicated its reliance upon the depositions of Richard W. Reed and Jay A. Pritzker. The testimony of these individuals is indeed crucial to a determination of whether the parties manifested an intention to enter into a present contract on November 15, 1979. In fact, it is the testimony of Richard Reed which the lower court relied upon primarily in support of its conclusion that the parties manifested an intention not to be bound in any way prior to the execution of a written document.

Depositions which are not filed and made a part of the record cannot be considered on a motion for summary judgment. *Thorsen v. Iron and Glass Bank*, 328 Pa.Super. 135, 140 n. 2, 476 A.2d 928, 930 n. 2 (1984). In the instant

case, the complete depositions of Richard Reed and Jay Pritzker have not been filed and made a part of the record. What has been made part of the record are excerpts from the depositions of these individuals which were submitted as exhibits in connection with appellees' motion for summary judgment. A reading of these excerpts reveals that testimony has been deleted, particularly in regard to the Reed deposition, which may have been useful in ascertaining the parties' intent at the November 15, 1979 meeting. However, appellants did not provide the lower court with any additional testimony from these depositions. It is the non-moving party's burden to file opposing affidavits and supplementary documents in response to a motion for summary judgment. Pa.R.C.P., No. 1035(b) and (d), 42 Pa.C. S.A. Appellants apparently chose not to supplement the excerpted deposition testimony of the principals involved. Therefore, we are bound on appellate review to the record which was before the lower court.

A review of the excerpted testimony and other evidence demonstrates that the record does not support the grant of summary judgment on Count II. Summary judgment can be entered only in cases which are clear and free from doubt. This is not such a case. There is evidence which disputes the lower court's conclusion as to the parties' intent on November 15, 1979. Although Richard Reed stated on examination by counsel for appellees that he did not have the authority to enter into a contract at the meeting with Jay Pritzker, the affidavit of D.M. Madole indicates that an agreement was entered into on that date.

On a motion for summary judgment, the evidence must be viewed in a light most favorable to the non-moving party. *Washington Federal Savings and Loan Association v. Stein, supra.* Reviewing the record in this light, we find some significant areas of doubt concerning the parties' intent on November 15, 1979, and whether an agreement was in fact entered into on that date. The lower court's resolution of these areas of doubt revolved into deciding issues of fact, which is impermissible on a motion for

summary judgment. *See Iman v. Hausman,* 354 Pa.Super. 458, 512 A.2d 41 (1986) (on a motion for summary judgment, court merely determines whether there is a controverted issue of fact, not whether the evidence submitted is sufficient to prove the particular fact). The ambiguities in the evidence should properly have been resolved in favor of the non-moving party, here, appellants. Thus, we will vacate the lower court's order granting summary judgment on Count II.

Appellants' next contention is that the lower court erred in granting summary judgment as to Count III of the amended complaint. The lower court found that the cause of action for fraud stated in Count III was based on the alleged oral agreement of November 15, 1979. Since the lower court had found that agreement not to exist, it would not entertain the allegations which it found to be based on the alleged oral contract. A cause of action for fraud consists of proof of the following elements: (1) a misrepresentation; (2) a fraudulent utterance thereof; (3) an intention by the maker that the recipient will act; (4) justifiable reliance by the recipient upon the misrepresentation; and (5) damages to the recipient as the proximate result. *Neuman v. Corn Exchange National Bank & Trust,* 356 Pa. 442, 51 A.2d 759 (1947). Fraud must be proven by evidence that is clear, precise and convincing. *Snell v. State Examining Board,* 490 Pa. 277, 416 A.2d 468 (1980). A promise to do something in the future, which promise is not kept, is not fraud. *Neale v. American Motorists Fire Insurance Company,* 185 Pa.Super. 60, 138 A.2d 290 (1958).

Appellants contend that the allegedly fraudulent act was the oral representation by Jay Pritzker at the November 15, 1979 meeting that GL would assume the obligation for PPC's debt to appellants in return for a three year moratorium on payments and appellants' forbearance from immediate legal action. The oral representation of Mr. Pritzker constitutes a promise to do something in the future. As such, it is not a proper basis for a cause of action for fraud. *Nissenbaum v. Farley,* 380 Pa. 257, 110 A.2d

230 (1955); *Neale v. American Motorists Fire Insurance Company, supra; Blose v. Martens,* 173 Pa.Super. 122, 95 A.2d 340 (1953). It is well-established that a cause of action for fraud must allege a misrepresentation of a past or present material fact. *Nissenbaum v. Farley, supra; Laughlin v. McConnel,* 201 Pa.Super. 180, 191 A.2d 921 (1963); *Blose v. Martens, supra.* Appellants' argument that the basis of Count III is non-disclosure or concealment of material facts ignores the fact that the oral statement by Jay Pritzker on which appellants rely as the basis of their fraud claim is an oral promise, not [merely] a misrepresentation. As appellants themselves set forth in their brief, in their discussion of fraud as the basis of Count III, "[i]n this case, Plaintiffs are alleging that Jay Pritzker made an oral representation that Great Lakes would assume the obligation for the PPC debt, in return for a three-year moratorium on payments and Plaintiffs' forbearance from imminent legal action." Mr. Pritzker's alleged oral statement was a *promise* to do something *in exchange* for something in return. His statement would not qualify as an act of fraud.

Appellants also ignore, in their attempt to distinguish the cases in which it is held that a promise does not constitute fraud, that Pritzker's alleged statements herein were made in connection with a contract, either the oral one alleged in Count II or the written agreement of February 8, 1980. Thus, appellant's attempt to distinguish cases in which fraud is alleged in connection with the attempt to avoid a written contract is unpersuasive. We conclude that the lower court did not err in granting summary judgment as to Count III of appellants' complaint.

■ Appellants' next contention that the lower court erred in granting summary judgment as to Count IV of the amended complaint. They argue that the written agreement of February 8, 1980 obligates appellees to pay the debt of PPC under a contract of suretyship as provided in 8 P.S. § 1. That statute defines agreements which constitute a contract of suretyship and provides:

Every written agreement hereafter made by one person to answer for the default of another shall subject such person to the liabilities of suretyship, and shall confer upon him the rights incident thereto, unless such agreement shall contain in substance the words: "This is not intended to be a contract of suretyship," or unless each portion of such agreement intended to modify the rights and liabilities of suretyship shall contain in substance the words: "This portion of the agreement is not intended to impose the liability of suretyship."

*Id.* Appellants argue that the fact that appellees, GL and Calvert, are referred to as "Debtors" along with PPC under the written agreement indicates that they intended to guarantee payment of the installment note owed by PPC under the terms of the written agreement.

The lower court rejected appellants' argument on the basis that the written agreement does not explicitly state that appellees are obligated on the note. The lower court reasoned that the agreement had been "prepared by skilled lawyers and signed by sophisticated businessmen" who would have explicitly stated that appellees were obligated on the installment note if that was their actual intention. In construing a contract, the intention of the parties is paramount. *Hutchinson v. Sunbeam Coal Corp.*, 513 Pa. 192, 519 A.2d 385 (1986). "The intent of the parties is to be ascertained from the document itself when the terms are clear and unambiguous." *Id.*

Where the language of the written contract is ambiguous, extrinsic or parol evidence may be considered to determine the intent of the parties. *In re Herr's Estate*, 400 Pa. 90, 161 A.2d 32 (1960). While courts are responsible for deciding whether, as a matter of law, written contract terms are either clear or ambiguous; [sic] it is for the fact finder to resolve ambiguities and find the parties' intent. *Easton v. Washington County Insurance Co.*, 391 Pa. 28, 137 A.2d 332 (1957); *Castellucci v. Columbia Gas of Pennsylvania, Inc.*, 226 Pa.Super. 288, 310 A.2d 331 (1973).

*Metzger v. Clifford Realty Corp.*, 327 Pa.Super. 377, 386, 476 A.2d 1, 5 (1984). A contract will be found to be ambiguous if it is reasonably susceptible of different constructions and is capable of being understood in more than one sense and is obscure in meaning through indefiniteness of expression or has a double meaning. *Id.* The written agreement in the instant case stated that the agreement was between the following parties:

> By and Among PENN POCAHONTAS COAL CO., a Delaware corporation, (PPC), CALVERT COAL COMPANY, a Delaware corporation, (Calvert), NEWCOAL NEWCO, INC., a Delaware corporation, (Newcoal), and GL CORPORATION, a Delaware corporation, (GL), *at times hereafter referred to collectively as Debtor*, and RICHARD W. REED and D.G. SISTERSON & COMPANY, agents for the former stockholders of Environmental Power, Ltd., a liquidated Delaware corporation (EPL), hereafter referred to as "Agents." (emphasis added).

The parties then explained in the written agreement PPC's indebtedness to EPL under the installment note, its payment of three of the annual principal installments, and its inability to pay the next installment due. The parties then stated:

> WHEREAS, Debtor has requested that the Agents, on behalf of EPL stockholders, agree to a suspension of payments of principal and interest under the Note in reliance upon certain promises and undertakings to be performed by Debtor.

The parties then, in paragraph 2 of the agreement, made the following provision for "Deferral of Principal Payments":

> Notwithstanding any provision of the Note to the contrary and subject to the provisions of Paragraph 9 hereof, the unpaid principal balance of the Note after the payment of principal provided for in Paragraph 1 hereof shall be paid as follows:

On December 31, 1982 $ 375,000.00

On December 31, 1983 $1,775,000.00

On each December 31 commencing December 31, 1984
 and ending December 31, 1987, four annual
 installments of $2,218,750.00

Paragraph 2 embodies the essential purpose of the agreement which is the repayment of the principal amount due on the installment note. However, the paragraph, due to the indefiniteness of its terms, fails to indicate which of the parties to the agreement is responsible for making the payments. Thus, an ambiguity is present in the agreement. The reference in Paragraph 2 to Paragraph 9 which refers to certain obligations of PPC under the agreement, does not resolve the ambiguity. In this regard, the lower court's assessment of the makers of the agreement is instructive. The drafters of this agreement were lawyers and skilled businessman. The remainder of the agreement specifies which of the Debtor companies are required to fulfill certain obligations. This paragraph, however, which contains the most crucial aspect of the agreement, is left indefinite as to the party which is to assume the obligation. Because of this ambiguity, the parties' intent is unclear.

The introductory paragraph quoted above also supports this interpretation. In that paragraph, it was indicated that the Debtor (referring to PPC, GL, and Calvert collectively) requested that EPL agree to a suspension of payments under the note in reliance upon "certain promises and undertakings to be performed by Debtor." This statement would indicate that certain of the promises in the written agreement were to be performed by the group as a whole, and not just by individual companies in the Debtor group. The possibility that one of the promises to be fulfilled by the group as a whole is the promise set forth is paragraph 2 is supported by allegations in the Madole affidavit where it is indicated:

15. The February 8, 1980 agreement also made provision for advances to be made to PPC by affiliated companies during the moratorium period.

16. The aforesaid advances, described in Paragraphs 5, 7 & 8.2 of the February 8, 1980 agreement were to be given "senior status," and to be paid out of "cumulative available cash flow."

17. This provision relating to the senior status of advances was independent of and unrelated to *the obligation of the Debtor group to resume payments on the PPC Note scheduled for December 31, 1982.* (emphasis added).

Certainly, these paragraphs from the Madole affidavit indicate the possibility that the Debtor group as a whole had assumed an obligation to repay PPC's debt. This evidence indicates the existence of a disputed issue of material fact. We conclude that the lower court erred in granting summary judgment on Count IV of appellants' amended complaint.

■ Appellants also contend that the lower court erred in granting summary judgment on Count V. The basis of Count V was that PPC, GL and Calvert made fraudulent misrepresentations in the written agreement of February 8, 1980. Specifically, appellants contend that the representation by GL that it would assume responsibility for the debt of PPC, was fraudulent.

As we have previously indicated, the written agreement is ambiguous as to the responsibility of GL for PPC's installment note obligation. Therefore, the basic premise of Count V, that the Debtor group represented that it would be responsible for PPC's obligation, is not established at this point. In addition, the principle that a breach of a promise to do something in the future does not constitute fraud is applicable here, as in Count III. *See Neale v. American Motorists Fire Insurance Company, supra; Nissenbaum v. Farley, supra; Blose v. Martens, supra.* The "representations" alleged to have been made by the Debtor group, even if established, would be in the nature of promises to do something in the future, and thus not actionable as fraudulent misrepresentations. Thus, the low-

er court did not err in granting summary judgment as to Count V.

We turn now to a consideration of appellant's appeal from the order of the lower court denying their motion to amend their complaint to file a second amended complaint. Appellants, in their motion to amend the complaint set forth two additional counts against appellees. The first was a "second cause of action" against GL in which appellants described various transactions involving Pritzker-owned and controlled corporations and PPC. Appellants alleged that these transactions demonstrated that GL had dominated and controlled PPC to the extent that "PPC was rendered a mere instrumentality of GL," that PPC was operated as a facade for GL, its dominant stockholder, that PPC's inability to pay its debt was a result of the activities of GL in connection with PPC and GL's misuse of PPC with the intent to defraud appellants. The lower court refused to grant permission to amend on the basis of these allegations, holding that the allegations stated a new cause of action which is barred by the two year statute of limitations for fraud. 42 Pa.C.S.A. § 5524(7).

 Amendments to pleadings are in general liberally permitted. *Laursen v. General Hospital of Monroe County*, 494 Pa. 238, 431 A.2d 237 (1981). However,

> [a]n amendment introducing a new cause of action will not be permitted after the Statute of Limitations has run in favor of a defendant.... However, if the proposed amendment does not change the cause of action but merely amplifies that which has already been averred, it should be allowed even though the Statute of Limitations has already run.

*Id.*, 494 Pa. at 243, 431 A.2d at 239, *quoting Schaffer v. Larzelere*, 410 Pa. 402, 407, 189 A.2d 267, 270 (1963).

Appellants contend on appeal that the allegations contained in the "Second cause of action against defendant Great Lakes Holdings, Inc." set forth in their motion to amend do not constitute a new cause of action. In support of this proposition, appellants cite *Village at Camelback v.*

*Carr,* 371 Pa.Super. 452, 538 A.2d 528 (1988), *allocatur granted* 519 Pa. 668, 548 A.2d 257 (1988). Appellants contend that the allegations set forth in their motion to amend constitute a claim of "piercing the corporate veil." They argue that *Camelback* holds that a claim seeking to "pierce the corporate veil" does not constitute a new cause of action; therefore, the lower court erred in denying them permission to amend their complaint.

We disagree with appellant's interpretation of *Camelback.* In that case, appellants, an incorporated association of property owners at a residential townhouse development, filed a twelve-count complaint against appellees, a group which included several corporations, one individual, and one proprietorship who were allegedly involved in the development, marketing and/or management of the development. The complaint contained numerous allegations of wrongdoing by the various parties, including improper operation of the association, improper design and construction of the development, failure to file tax returns for the development, and other allegations. *Village at Camelback v. Carr, supra* 371 Pa.Super. at 455, 538 A.2d at 530. The twelfth count of the complaint contained the following allegation: "This count seeks to impose individual liability on Carr [the one individual person named as defendant in the complaint] on a theory of piercing the corporate veil."

In the introductory comments to its opinion, the panel in *Camelback* noted that "the last count [of the complaint] does not in fact plead a separate cause of action or theory of relief at all, but rather seeks generally to pierce the corporate veil of the various corporate defendants to assess liability against Carr individually for the allegedly wrongful acts of those corporate defendants pled in the preceding counts." *Village at Camelback v. Carr, supra,* 371 Pa.Superior Ct. at 459, 538 A.2d at 535. The court then proceeded to analyze the facts of the case and applicable law and concluded that appellants had sufficiently pleaded the ultimate facts necessary to state a cause of action for piercing the corporate veil.

Appellants in the instant case have improperly construed the court's introductory remarks in *Camelback*. Those remarks do not constitute a holding that no separate cause of action is stated when a claim for piercing the corporate veil is pled. The *Camelback* court was merely commenting on the state of the record in that particular case, which was that in count twelve of their complaint, the appellants had asserted a general claim of piercing the corporate veil which, for its specifics, relied on and referred back to the other counts set forth in the complaint. Thus, the court's comment was entirely dependent on the particular facts present in *Camelback*, specifically the organization and structure of the *Camelback* plaintiffs' complaint. The comment was most definitely not a general holding that when a claim is made under an alter ego theory, a separate cause of action is never stated.

Appellants also argue, in the alternative, that no separate cause of action was stated in the proposed second cause of action against GL because the allegations pled in the proposed second cause of action merely amplify the allegations in the amended complaint. Appellants contend that a claim of piercing the corporate veil is always a proper amplification of the cause of action originally pleaded, if justified by the facts of the particular case. We disagree with appellants' characterization of the allegations in the proposed second amended complaint as an amplification of the allegations previously pled in their amended complaint.

The causes of action alleged in the amended complaint included 1) breach of an oral contract allegedly entered into between the parties on November 15, 1979; 2) fraudulent misrepresentations at the November 15, 1979 meeting; 3) breach of a contract of suretyship based on the written agreement of February 8, 1980; and 4) fraudulent misrepresentations set forth in the February 8, 1980 written agreement. The proposed second cause of action against GL describes a course of conduct and various transactions by GL and other Pritzker interests beginning in 1975, and

concluding with the allegation that GL used its control and domination of PPC to defraud appellants.

We are unable to find that the allegations in the proposed second amended complaint are merely an amplification of the previously stated causes of action. As appellees have indicated, the allegations previously stated all relate to breaches of the alleged oral and written agreements and fraudulent misrepresentations made in connection with those alleged contracts. The allegations in the proposed second amended complaint, on the other hand, relate to the existence of a purported scheme and course of conduct designed to defraud appellants through GL's alleged control and domination of PPC. Those allegations relate to distinct factual circumstances and state completely different theories of liability from those previously alleged. We conclude that the allegations in appellants' proposed second cause of action against GL state a separate and distinct cause of action.[4]

Having found that a separate cause of action was stated, we must now determine whether the proposed amendment was filed within the applicable statute of limitations. *See Laursen v. General Hospital of Monroe County, supra.* The lower court determined that the proposed second cause of action against GL stated a cause of action for fraud which was barred by the two year statute of limitations. 42 Pa.C.S.A. § 5524(7).[5] In so holding, the lower court re-

---

**4.** Our holding in this regard establishes the appealability of the lower court's order denying appellant's permission to amend their complaint. *See Barr v. General Accident Group Ins. Co.,* 360 Pa.Super. 334, 520 A.2d 485 (1987) (denial of leave to amend a complaint to assert recovery based on a different cause of action from that originally pleaded is an appealable order).

**5.** Section 5524(7) provides:
The following actions and proceedings must be commenced within two years:
(7) Any other action or proceeding to recover damages for injury to person or property which is founded on negligent, intentional, or otherwise tortious conduct or any other action or proceeding sounding in trespass, including deceit or fraud, except an action or proceeding subject to another limitation specified in this subchapter.

ferred to the pleadings which had been filed in connection
with an action in the United States District Court for the
Western District of Pennsylvania on October 10, 1985, in-
volving the same parties. In that action, appellants had
alleged violations by appellees of the Racketeer Influenced
and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961 et
seq., as well as allegations of intentional interference with
contractual relations. The lower court found that the same
acts of fraud and alleged scheme to defraud appellants that
appellants have set forth in their proposed second amended
complaint were the basis of the action in federal court. The
lower court then cited appellants' sworn answers to inter-
rogatories in that action which indicated that appellants
became aware of the alleged fraudulent scheme in 1983.
Since the motion to amend in the instant case was not filed
until March 30, 1987, the lower court found section 5524(7)
applicable and concluded that amendment should be prohib-
ited because it was beyond the limitations period.

We agree with the lower court's analysis. We have
examined appellants' federal court complaint and find, de-
spite appellants' claim to the contrary, that the allegations
therein are substantially the same as those set forth in their
proposed second amended complaint against GL. In addi-
tion, appellants' answers to interrogatories and brief filed in
connection with the federal court action contain appellants'
statements that they were aware of the "falsity of [appel-
lees] representations" by the end of 1983. Since there are
no significant differences in the allegations contained in the
proposed amended complaint from those alleged in appel-
lants' federal court complaint, appellants are indeed, as the
lower court opined, faced with their own sworn answers to
interrogatories, which reveal their awareness of the allega-

42 Pa.C.S.A. § 5524(7).
　Actions based upon fraud have also been held subject to the two-
year limitation of actions under section 5524(3) which includes ac-
tions for "taking, detaining or injuring personal property, including
actions for specific recovery thereof." *Id.* § 5524(3); *A.J. Cunning-
ham Packing Corp. v. Congress Financial Corp.,* 792 F.2d 330 (3d
Cir.1986).

tions in 1983 and not, as they have contended on appeal, in 1986 or 1987 as a result of the discovery process in this action. Since it appears from these prior pleadings that appellants were aware of the cause of action stated in the proposed second amended complaint in 1983, their proposal in 1987 to amend their complaint to state this separate cause of action is beyond the statute of limitations. Thus, the lower court did not err in denying appellants' motion to amend the complaint with regard to the proposed second cause of action against GL.

Appellants also alleged in their motion to amend a "third cause of action against Calvert Coal Company, Inc. and Great Lakes Holdings, Inc. for equitable subordination." The lower court found that equitable subordination, a power granted to a federal bankruptcy court, is not a cognizable cause of action under Pennsylvania law. Appellants have failed to present in their brief on appeal any arguments raising the issue of equitable subordination or challenging the lower court's holding on this issue. Since appellants have failed to develop this issue in their brief on appeal, we find it waived and will not consider the merits thereof. *Commonwealth v. Sanford,* 299 Pa.Super. 64, 445 A.2d 149 (1982).

In conclusion, we affirm the lower court's order denying appellants' motion to amend the complaint, and its order granting summary judgment as to Counts III and V of their amended complaint. We reverse the order of the lower court granting summary judgment as to Counts II and IV and remand the case to the lower court for further proceedings on these allegations.

Affirmed in part; reversed in part; remand to lower court for further proceedings consistent with this memorandum. Jurisdiction relinquished.