**Myron Lee SCHRECK and Penny Schreck, his wife, Appellants,**

v.

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, a/k/a PENN DOT.**

Commonwealth Court of Pennsylvania.

Argued Dec. 7, 1999.

Decided April 12, 2000.

Timothy G. Lenahan, Scranton, for appellants.

William A. Slotter, Allentown, for appellee.

Before SMITH, J., FLAHERTY, J., and NARICK, Senior Judge.

FLAHERTY, Judge.

Myron Schreck and Penny Schreck, his wife (collectively, the Schrecks) appeal from an order of the Court of Common

---

Pleas of Monroe County (trial court) which granted the Department of Transportation's (DOT) motion for summary judgment. We reverse.

Myron was a passenger in a vehicle driven by George Diem on September 21, 1994, which was involved in a collision with a DOT truck on Interstate Route 380. They were in the left lane following close behind a tractor-trailer so as to block the sun from George Diem's eyes. When the tractor-trailer turned into the right hand lane, Mr. Diem testified that the glare of the sun was strong and that he reached for his windshield visor. The next thing he remembers is hitting the back of a DOT truck.

DOT was repairing potholes in the left lane of the road. This work involved three DOT trucks: 1) a "Roscoe machine" which was used to fix the potholes, 2) an "attenuator/crash" truck (attenuator truck) located behind the Roscoe machine, and 3) a pick-up truck with a flashing arrow board affixed to the back of the pick-up. The pick-up truck was located approximately 1,360 feet from the attenuator truck and warned oncoming traffic to get into the right lane. George and Myron crashed into the attenuator truck. The attenuator truck is a safety precaution used to soften the impact if a vehicle would crash into it and also to protect DOT employees who are on the road so as to have a barrier between them and oncoming traffic. *See* R.R. at pp. 652a–653a. The attenuator truck is required to be located at a minimum of 100 feet from the work area to a maximum of 250 feet from the work area. R.R. at 684a; Figure 23.

■ The Schrecks instituted suit in the trial court. DOT made a motion for summary judgment based upon the sovereign immunity afforded by the Judicial Code, 42 Pa.C.S. §§ 8521 – 8528, commonly called the Sovereign Immunity Act (the Act).

The Schrecks opposed the grant of summary judgment based upon, inter alia, exceptions to sovereign immunity which are applicable herein, and upon there being genuine issues of material fact. The trial court granted DOT's summary judgment motion. From the trial court's order granting summary judgment, the Schrecks appeal.[1]

As DOT's summary judgment motion was filed March 8, 1999, after the effective date of Pa. R.C.P. Nos. 1035.1–1035.5, those rules govern our disposition of this case. *See, e.g., Overbeck v. Cates,* 700 A.2d 970, 971 n. 1 (Pa.Super.1997), *allocatur denied,* 553 Pa. 682, 717 A.2d 534 (1998)(date of filing of summary judgment motion is dispositive of which version of the rules apply). The grant of summary judgment is proper whenever 1) there is no genuine issue of material fact that could be established by additional discovery or expert report, or, 2) after completion of discovery relevant to the motion, the party opposing the motion who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury. Pa. R.C.P. No. 1035.2. However, the grant of summary judgment is warranted only in a clear case and the record must be viewed in a light most favorable to the non-moving party resolving all doubts regarding the existence of a genuine issue of material fact against the grant of summary judgment. *See Young v. Department of Transportation,* 560 Pa. 373, 744 A.2d 1276 (2000). It is the burden of the moving party to prove entitlement to summary judgment by proving the non-existence of any genuine issue of material fact. *East Lampeter Township v. County of Lancaster,* 744 A.2d 359, 363 n. 7 (Pa. Cmwlth.2000). Furthermore, in ruling on a summary judgment motion, the role of

---

**1.** Appellate review over an order granting or denying summary judgment is limited to determining whether the trial court committed an error of law or abused its discretion. *A.*

*Pickett Construction Inc. v. Luzerne County Convention Center,* 738 A.2d 20 (Pa.Cmwlth. 1999).

the trial court is not to resolve factual issues but only to determine if there are any material factual issues to be resolved. *Ruszin v. Department of Labor & Industry, Bureau of Workers' Compensation,* 675 A.2d 366 (Pa.Cmwlth.1996).

Although the Schrecks raise several issues, we need address only one of them as we find it dispositive of whether summary judgment was properly entered in this case. The Schrecks contend that the so-called operation of a motor vehicle exception to immunity applies to this case. This exception is found at Section 8522(b)(1) of the Judicial Code, which provides in relevant part that

> **(b) Acts which may impose liability.**—The following acts by a Commonwealth party may result in the imposition of liability on the Commonwealth and the defense of sovereign immunity shall not be raised to claims for damages caused by:
>
> **(1) Vehicle liability.**—The operation of any motor vehicle in the possession or control of a Commonwealth party. As used in this paragraph, "motor vehicle" means any vehicle which is self-propelled and any attachment thereto ....

42 Pa.C.S. § 8522(b)(1). The Schrecks contend that the attenuator truck was moving and therefore in operation at the time of the accident rendering this exception applicable. DOT asserts that the attenuator truck was stopped at the time of the accident and therefore not in operation at the time of the accident, thus rendering this exception inapplicable. In response, the Schrecks contend that this dispute at the very least creates a fact question for the jury to resolve as to whether the attenuator truck was moving or not.

It is undisputed that the pothole patching activities DOT was engaged in were governed by DOT's guidelines found at 67 Pa.Code § 203.131, Figure 23 (Figure 23). Figure 23 sets forth the minimum types of warning and safety devices which must by utilized for the type of operation DOT was engaged in on the day of the accident which is described as an "operation [which] moves intermittently or continuously at an average speed of more than 1 mph (88 ft/min)." 67 Pa.Code § 203.131, Fig. 23. See also R.R. at 684a. This operation is also known as a "moving short-term operation." Figure 23. The moving short-term operation involves the work vehicle, in this instance the Roscoe truck, a required shadow vehicle No. 1, in this instance, the attenuator truck, and an optional shadow vehicle No. 2, in this instance, the pick-up truck with a flashing arrow board. Essentially, as described by DOT employees, in a pot-hole patching operation in order to comply with DOT's guidelines under Figure 23, DOT employees patch only certain sized potholes so as to maintain the average speed of more than one mile per hour even though the operation stops and starts. *See, e.g.,* R.R. at 721a–22a wherein one DOT employee described the operation as follows:

> You have to understand, it's an on the move operation, for them to keep moving, because of the pub 23 [Figure 23] and moving. They may patch this pothole ..., we usually try to start out with the large potholes ..., and there may be five or six smaller ones. We go past them, and we go patch the smaller potholes later on.

The Schrecks argue that the attenuator truck was moving at the time of the accident. The Schrecks state that

> [t]he testimony of Duane Bartelson [2] establishes that at the time of the accident, the vehicles once again began *moving.* (R.R. 851a–852a) Mr. Bartelson testified that although the [DOT] vehi-

---

**2.** The Schrecks spell the name of DOT's employee as "Bartelson." DOT refers to him by both "Bartleson" and "Bartelson." See DOT's brief at pp. 14–15. The trial court referred to him as "Bartleson." See trial court's slip op. at p. 4. We will refer to him as "Mr. Bartleson." Mr. Bartleson was an equipment operator for DOT who was working at the scene on the day of the accident.

cles had temporarily stopped to fill a pothole, just before the accident, the vehicles began moving once again. (R.R. 851a–852a)

Schrecks' brief at p. 32. The testimony, which the Schrecks point to, is as follows.

Q. And where were you?

A.[by Mr. Bartleson] I was—well, at that time I was inside the truck.

Q. What truck?

A. Okay. In the Rosco [sic] truck. Now beings—when we do a hole, like we're in a moving operation, right, so we just get whatever size holes, like certain size and that's it. So, I got in the truck to go to the next hole because I don't ride in the back of the machine. Well, it was a small hole, so until I would have gotten [back] out, he [presumably, the man patching the hole] was done and we were moving . . . .

R.R. at 852a. The Schrecks contend that the "we" in the last quoted sentence "we were moving" means that both the Roscoe truck and the attenuator truck were moving. The Schrecks point out that the attenuator truck was to shadow the Roscoe truck following behind the Roscoe truck to act as a safety device for DOT's employee's utilizing the Roscoe truck to repair pot holes. The trial court rejected this interpretation of Mr. Bartleson's testimony, reasoning that Mr. Bartleson "testified that the vehicle he was sitting in was moving at the time of the accident. A close reading of his testimony shows that he was in the Roscoe and not in the attenuator truck." Trial court slip op. at pp. 4–5. Relying upon the trial court's interpretation, DOT argues that there is no issue of material fact regarding whether the attenuator truck was moving given that there was testimony from several others that the attenuator truck was not moving at the time of the accident.

We disagree with the trial court and DOT. Initially, we note that there is no testimony by Mr. Bartleson that only "the vehicle he was sitting in was moving" as the trial court implied. Viewing the entire context of Mr. Bartleson's testimony in this regard, it is not clear at all whether he meant only his own vehicle was moving or whether the entire operation including the attenuator truck was moving. His testimony simply does not elaborate on whom he meant by the "we" in his sentence "we were moving." We readily grant that the trial court's interpretation is one possible interpretation. However, the Schrecks' interpretation of "we" is also a possible interpretation. Thus, Mr. Bartleson's statement that "we were moving" is ambiguous. In granting the summary judgment motion, the trial court construed this ambiguity in favor of DOT and against the Schrecks. This was error. In the procedural posture of this case, considering a motion for summary judgment, we are to construe all the evidence in a light most favorable to the party which is opposing the summary judgment motion. *Washington v. Baxter*, 553 Pa. 434, 719 A.2d 733 (1998). Moreover, "all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party." *Washington v. Baxter*, 553 Pa. at 441, 719 A.2d at 737. Given that there is doubt as to whether "we were moving" means only Mr. Bartleson's vehicle or the entire caravan, that doubt must be resolved in favor of the non moving party, the Schrecks, pursuant to the proper application of summary judgment rules. *See Krause v. Great Lakes Holdings, Inc.*, 387 Pa.Super. 56, 563 A.2d 1182, 1186–1187 (1989), *allocatur denied*, 524 Pa. 629, 574 A.2d 70 (1990)(where trial court's interpretation of evidence was not the only interpretation, the "ambiguities in the evidence should properly have been resolved in favor of the non-moving party . . . ."). Moreover, we note that it was DOT's burden to prove the non-existence of any genuine issue of material fact. *East Lampeter Township*. Given that Mr. Bartleson's statement that "we were moving" viewed in a light most favorable to the Schrecks as the nonmoving party raises at least the possibility that the entire caravan includ-

ing the attenuator truck was moving, DOT has failed to carry its burden to show that there existed no genuine issue of material fact in order to merit the grant of summary judgment. Upon the record as it exists with its attendant ambiguity regarding Mr. Bartleson's testimony about the movement of the attenuator truck, the trial court erred in granting summary judgment to DOT by resolving the factual issue of whether the attenuator truck was moving or not in favor of DOT in the face of Mr. Bartleson's testimony which when viewed in a light most favorable to the Schrecks could support a factual determination that the attenuator truck was moving.

Accordingly, the order of the trial court is reversed. The case is remanded for further proceedings.

### ORDER

AND NOW, this 12th day of April, 2000, the order of the Court of Common Pleas of Monroe County, docketed at No. 5748 Civil Division 1996 and dated May 13, 1999, is hereby reversed. This case is remanded to that Court for further proceedings consistent with the opinion accompanying this order.

Jurisdiction relinquished.