# Liberty Mutual Insurance Co. v. Pennsylvania Property and Casualty Insurance Guaranty Association

*Brian L. Calistri,* for plaintiffs.
*Lise Luborsky,* for defendant.

ALEJANDRO, *J.,* May 7, 2001—

## INTRODUCTION

This matter commenced as a declaratory judgment action on a matter of first impression seeking to determine whether the Pennsylvania Property and Casualty Insurance Guaranty Association is entitled to offset workers' compensation benefits received in 1992 from a medical malpractice action which was settled in 1998. Both Liberty Mutual Insurance Company and Catherine O'Brien, plaintiffs, and PPCIGA filed separate motions

for summary judgment. These pleadings were assigned to the undersigned motion judge. By orders dated December 19, 2000, plaintiffs' motion for summary judgment was granted; defendant's motion for summary judgment was denied. Dissatisfied, defendant filed this appeal.

## FACTUAL AND PROCEDURAL HISTORY

In December 2000, this motion judge carefully reviewed the pleadings and exhibits filed in this matter, as well as the memorandum of law submitted in support of the respective pleadings. Briefly, the factual and procedural record, defined by these pleadings, is as follows:

On June 6, 1990, plaintiff Catherine O'Brien, while in the course and scope of her employment with Ports of the World, fell and suffered injuries to her right ankle and foot. Plaintiff Liberty Mutual Insurance Company, the workers' compensation insurance carrier for the employer, paid her benefits in the amount of $58,985.

For her injuries, plaintiff O'Brien sought treatment from Gary Muller M.D., at Academy Industrial and Occupational Heath Services Inc. Believing these providers breached their duty of care and responsibility, plaintiff O'Brien sued Dr. Muller and Academy Industrial in the Philadelphia Court of Common Pleas, in a matter entitled *Catherine O'Brien v. Muller,* March term 1993, no. 0491. At the time of the alleged malpractice, Dr. Muller was insured by the Physician Insurance Company. Under the terms of Dr. Muller's policy, PIC provided primary coverage of $200,000 for any loss. Thereafter, an excess coverage of $1 million insurance was provided by the Pennsylvania Medical Catastrophic Loss Fund (commonly known as the CAT Fund). By order of the Commonwealth Court dated January 21, 1998, PIC was

ordered into liquidation due to its insolvency, and its *covered claims,* as defined by statute, were assumed by Pennsylvania Property and Casualty Insurance Guaranty Association, the defendant in this instant matter. See 40 P.S. §991.1803.

On November 6, 1998, plaintiff O'Brien agreed to settle her medical malpractice civil action for a gross amount of $107,500. As part of the settlement agreement, plaintiff O'Brien and defendant PPCIGA reserved the right to litigate the issue of whether defendant PPCIGA was required to pay the full amount of the settlement or was entitled to offset the amount plaintiff O'Brien received in workers' compensation benefits ($58,985). Consequently, defendant PPCIGA forwarded, and plaintiff O'Brien accepted, a partial settlement payment of $48,515. Thereafter, the declaratory action was filed and this motion judge was presented with the parties' respective motion for summary judgment.

## ISSUE

In response to an order issued on January 22, 2001, in accordance with Pennsylvania Rules of Appellate Procedure 1925(b), defendant PPCIGA on February 7, 2001, filed of record a concise statement of matters complained of on appeal, and essentially contends that:

"The order granting summary judgment against defendant PPCIGA is contrary to the clear statutory language of the Pennsylvania Property and Casualty Insurance Guaranty Association Act, 40 P.S. §991.1801 et seq."

## LAW AND DISCUSSION

The standard for ruling on motions for summary judgment is set forth in Pennsylvania Rules of Civil Proce-

dure 1035.1 through 1035.5. In their pertinent part, these rules provide that summary judgment shall be rendered:

"[A]fter the relevant pleadings are closed . . . any party may move for summary judgment . . . whenever there is no genuine issue of any material fact as to a necessary element of the cause of action . . . ."

A grant of summary judgment is proper where the record [pleadings, depositions, answers to interrogatories, admissions of record, and affidavits] supports the lower court's conclusion that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *Doe v. Philadelphia Community Health Alternatives AIDS Task Force,* 745 A.2d 25, 27 (Pa. Super. 2000); *Krause v. Great Lakes Holdings Inc.,* 387 Pa. Super. 56, 563 A.2d 1182 (1989), *alloc. denied,* 524 Pa. 629, 574 A.2d 70 (1990). A trial court must accept as true all well-pleaded facts relevant to the issues in the non-moving party's pleadings, and give the non-moving party the benefit of all reasonable inferences to be drawn from the facts. *Id.; Rybas v. Wapner,* 311 Pa. Super. 50, 457 A.2d 108 (1983). The court must ignore controverted facts contained in the pleadings and restrict its review to material filed in support of and in opposition to a motion for summary judgment and to those allegations in the pleadings that are uncontroverted. *Overly v. Kass,* 382 Pa. Super. 108, 554 A.2d 970 (1989). Summary judgment should not be entered unless the case is clear and free from doubt. *Nationwide Mutual Insurance Co. v. Nixon,* 453 Pa. Super. 70, 75, 682 A.2d 1310, 1313 (1996), *alloc. denied,* 548 Pa. 613, 693 A.2d 589 (1997).ʹ (citations omitted)

An appellate court will overturn a trial judge's order granting a motion for summary judgment only if there

has been a clear abuse of discretion or an error of law. *Accu-Weather Inc. v. Prospect Communications Inc.,* 435 Pa. Super. 93, 644 A.2d 1251 (1994). An abuse of discretion exists when, in reaching a conclusion, the trial court misapplies or overrides a law, or when the judgment exercised is manifestly unreasonable or lacking in reason. *In re Deed of Trust of Rose Hill Cemetery Association,* 527 Pa. 211, 590 A.2d 1 (1991).

Here, there are no disputes as to the material facts. What was in dispute is whether defendant PPCIGA is entitled to offset the workers' compensation benefits plaintiff O'Brien received prior to filing her medical malpractice action in 1993.

This motion judge in December 2000, ruled on the parties' motion for summary judgment, approximately four months prior to the issuance of *Panea v. Isdaner,* 2001WL 347831 (Pa. Super.). At said time, this motion judge was persuaded by plaintiffs' argument and granted plaintiffs' motion for summary judgment. However, in light of the *Panea* decision, this motion judge acknowledges that the ruling is inconsistent with the appellate court's decision. In *Panea,* the appellate court held that: "the provisions of the PPCIGA statute are triggered when an order of liquidation with a finding of insolvency is entered against an insurer after the effective date of the Act. See 40 P.S. §991.1802. . . . The key determinant of whether or not the claim is covered under the Act is whether the liability remains unpaid at the time the Act is triggered."

When addressing the issue of the cause of action arising prior to the effective date of the PPCIGA Act and its non-duplication of recovery provision, the *Panea* court

further held that the time of the underlying injury upon which suit is brought is not the determinative factor. What is controlling is when the Act is triggered. The fact that the cause of action arose prior to the effective date of the Act is irrelevant and does not exempt the applicability of the amended Pennsylvania Insurance Guaranty Association statute. *Mc Carthy v. Bainbridge,* 739 A.2d 200 (Pa. Super. 1999).

Instantly, when plaintiff O'Brien suffered her work-related injuries and subsequent malpractice injuries, the PIGA Act was in effect. The Act then specifically excluded from its definition of *property and casualty insurance policy* any coverage provided by workmen's compensation benefits. See section 1701.103(3)(viii).

The PIGA statute was repealed and replaced by the Pennsylvania Property and Casualty Insurance Guaranty Act, effective February 10, 1995. See 40 P.S. §991.1801-1820. The purpose of the new Act is, in part, to provide a means for payment of covered claims under certain property and casualty insurance policies. Section 991.1801(1). The Act defines *covered claims* as "an unpaid claim . . . which arises out of and is within the coverage . . . issued by an insurer if such insurer becomes an insolvent insurer after the effective date of this article . . . ." Section 991.1802. The Act further defines *property and casualty insurance policy* as "any contract . . . which provides coverage enumerated in section 202, (40 P.S. §382) except: . . . (10) workmen's compensation and employer's liability insurance." The Act further provides that PPCIGA shall be obligated to pay covered claims existing prior *to* the determination of the insolvency. Section 991.1802. Pursuant to the Act, any per-

son recovering from PPCIGA shall be deemed to have assigned his rights under the policy to the association to the extent of his recovery from the association. Section 991.1816(a). The non-duplication of recovery provision of the Act provides that "a claim under an insurance policy shall include a claim under any kind of insurance . . . and shall include . . . workers' compensation. Any amount payable on a covered claim under this Act shall be reduced by the amount of any recovery under other insurance." Section 991.1817.

As stated, at issue here was whether the PPCIGA Act of 1995 applies retroactively to plaintiff O'Brien requiring an offset of her workers' compensation benefits received in 1992 for injuries suffered in 1990, and when her medical malpractice action, filed in 1993, was settled in 1998 (after the effective date of the PPCIGA Act). In light of the holding in *Panea,* the answer is yes and, therefore, in this motion judge's revised opinion, defendant PPCIGA is entitled to offset plaintiff O'Brien's workers' compensation benefits. Consequently, this motion judge acknowledges that the rulings on the motions for summary judgment do not conform with the appellate court's holding in *Panea.*

## CONCLUSION

In light of the foregoing, this trial judge acknowledges and incorporates the recent appellate decision, and respectfully recommends that this matter be either remanded to reflect this motion judge's reconsidered opinion, or in the alternative, that this appeal be granted, and that the entry of summary judgment in favor of plaintiffs and that against defendant be reversed.