Collins, Appellant, *v.* Zediker.

Argued March 18, 1966. Before MUSMANNO, JONES, COHEN, EAGEN and O'BRIEN, JJ.

*Donald D. Doerr,* for appellant.

*Richard B. Kirkpatrick,* with him *Galbreath, Braham, Gregg, Kirkpatrick & Jaffe,* for appellee.

OPINION BY MR. JUSTICE MUSMANNO, April 19, 1966:
How fast does a man walk? A woman? A child? An aged person? If in a hurry? If not in a hurry? The answer to these questions would inevitably be: It depends on the circumstances. That is what this case is about.

Mrs. Catharine Collins, while crossing from the western to the eastern side of a road 18 feet wide, was

about two-thirds of the way to her goal when an automobile traveling in a northward direction struck her. The jury returned a verdict for the defendants and the plaintiff seeks a new trial, asserting that the trial court erred in allowing an expert witness to estimate the speed of a pedestrian's pace.

Wm. P. Greenough, an engineer, testified that a person walking at a slow rate would take 6 seconds to advance 18 feet, moving at a moderate rate of speed he would occupy 5 seconds to traverse that distance, and if he walked at a fast rate, 4 seconds would carry him to his destination. This same engineer had testified that if the defendant's automobile was moving at 50 miles per hour, it would take 13.3 seconds to cover the unobstructed clear vision south of the plaintiff.

It could well be that the jurors, having accepted as scientific fact, the engineer's testimony as to the time required for an automobile to travel a certain distance (a subject not necessarily within the general knowledge of the average layman), concluded that the engineer must have been equally expert on walking speed and that if he had worked it out mathematically and engineeringly that the plaintiff deliberately walked into a collision, they had no further responsibility in the case. On that basis of reasoning, if it occurred, and we cannot say by the record that it did not occur, since the verdict included the possibility of that conclusion, the plaintiff was done an injustice, since it was the jury's responsibility to determine the speed of the plaintiff's walking, not the engineer's.

Phenomena and situations which are matters of common knowledge, may not be made the subject for expert testimony. In *Burton v. Horn & Hardart*, 371 Pa. 60, this Court said: "Expert testimony is inadmissible when the matter can be described to the jury and the condition evaluated by them without the assistance

of one claiming to possess special knowledge upon the subject."

No experience could be more ordinary and within the range of a jury's comprehension than the speed of a walker. Everybody walks. Every normal person has a pair of legs. Not every person, however, owns an automobile, and even if one does, he may not be able to calculate with accuracy the distance an automobile travels moving at a certain velocity.

The speed of a person in a one hundred yard dash, of a football player making a 90-yard run, of a pugilist rising from the resin to achieve perpendicularity to receive another fusillade of blows of the kind which had floored him before, may be a matter of stop-watch calculation, but determination of the time involved in a pedestrian's reaching a spot only 18 feet away not only does not require the services of a mechanical computer, an IBM machine or a graduate engineer, but the fact is that none of these can work out the correct answer as satisfactorily as a layman. The function of walking embraces imponderables and variables which a machine or an engineer does not compute, as for instance, agility of footwork, acuity of eyesight, surface of terrain underfoot, noises of distraction, intrusion of visual objects, nervous tension of the walker, state of his reflexes, vigor of concentration, the nature of the clothing worn, the weight of the shoes on his feet. Where fractions of seconds are involved, all these factors contribute to the speed with which a pedestrian moves between two points especially when those termini are not far apart.

The tangle of inaccuracy and unreliability into which testimony such as that given by Greenough may lead a jury is made additionally manifest in the fact that he testified to the speed of a pedestrian traveling 18 feet, the width of the road, whereas the evidence indicated that the plaintiff had gotten only two-thirds

of the way across when she was struck, which of course would mean that she had not traveled 18 feet.

Moreover, there was no unanimity of view as to the gait the plaintiff employed in undertaking the passage of the road before her. The defendant testified that Mrs. Collins "came at a fast walk." The defendant's sister testified that the plaintiff "looked up and smiled and then sort of hurried across the road more than what she had done before." Did the expert witness take into consideration the smiling of the plaintiff? The plaintiff could not have smiled if the defendant's car was about to crush her beneath its wheels. The quoted testimony would suggest that the defendant's car was far enough away, when the plaintiff smiled, that she was assured she could negotiate the road in safety. It cannot be argued that she was smiling in anticipation of what was to happen to her because in the next few moments she was knocked unconscious, her hip smashed, her face and head bleeding from wounds.

We are convinced from the record that the engineer's formidable testimony of a pedestrian's speed in walking, presented in more or less of a professional and scientific fashion from the witness stand, could well have unduly influenced the jury in behalf of the side which had called him, regardless of inherent merit involved. Jurors are humans and are impressed by scientific talk even though, upon profound reflection, they could realize that in the particular field under discussion they are as much at home as the scientist. The jury should be insulated, to the extent that it is possible, from undue persuasion from the witness stand based upon externals removed from the intrinsic problem to be solved. The trial court here should have refused expert testimony on a situation so obviously within the jury's comprehension, its concluding potentialities, and the scope of its responsibilities as judges

of the facts. Allowing expert testimony in the circumstances here related on the speed of walking was as much error as if the judge had allowed expert testimony on the speed with which the average person consumes a hamburger sandwich, wraps spaghetti around his fork or drinks a glass of California wine. As this Court said in *Dooner v. Canal Co.,* 164 Pa. 17: "The jury still have some duties to perform; inferences drawn from the ordinary affairs of life ought not to be drawn for them, and turned over under oath from the witness stand."

Judgment reversed with a venire facias de novo.

Mr. Justice COHEN concurs in the result.