Maholland, Appellant, *v.* Bird et al.

432

Argued June 10, 1974. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*Lawrence M. Aglow,* for appellant.

*Ross A. Unruh,* with him *William J. Gallagher,* and *MacElree, Platt, Harvey & Gallagher,* for appellees.

OPINION BY HOFFMAN, J., September 23, 1974:

Appellant contends that the trial court erroneously excluded the proffered testimony of appellant's expert.

On July 26, 1969, appellant, plaintiff below, attended a social outing held at appellees' home, celebrating the end of the season of the Downingtown Little League. The appellant was the father of one of the boys in the league. Appellant was seriously injured when he struck some portion of the appellees' swimming pool while executing a dive from the diving board.

Appellant brought an action in trespass in the Court of Common Pleas in Chester County. The action for personal injuries was based on the theory that the appellees maintained a hazardous condition on their property.

At trial, an expert witness testified on behalf of appellant. The witness had extensive experience in consulting colleges and others in the design of athletic facilities, in teaching water safety, and in running swimming facilities. The expert, based on personal observations, gave a detailed description of the swimming pool in which appellant sustained his injury. Objection was raised, however, when counsel for appellant asked the witness ". . . are you able to form an opinion concerning the safety of the construction of this pool or any of its parts?" An offer of proof was made at side bar.[1] The court disallowed the question because it called for a conclusion which the jury was equally capable of forming and which went to the ultimate issue in the case.

The jury returned a verdict for the defendants. The present appeal followed the trial judge's denial of appellant's motion for a new trial.

---

[1] Counsel proposed to ask the following questions:

"First question would be, given a pool, which has at one end a deep area, which is at least eight feet two inches at its deepest part, and which is formed by the—by four sloping walls, which come together to form a flat area at the bottom of fifty-four square inches, and that this deep area is beneath a diving board, which is affixed to the end of the pool and set some six feet beyond the end of that diving board, do you have an opinion concerning the hazardous nature of that arrangement . . . .

"The second question is, again, giving the same factors and the additional factor of a diving board, which has been referred to with the coil springs, which have been observed, do you have an opinion about the hazardous nature of that diving board arrangement on that pool . . . .

"Third. Given all of these factors, and the absence of markings for the—I am sorry—upon the surface of the pool to indicate the hopper area, and the absence of any specific prohibitions or instructions about diving—which Your Honor recalls has been testified to by the plaintiff, no one told him anything—do you have an opinion about the hazardous nature of that method of operation."

The law governing expert testimony is well settled in Pennsylvania. "Phenomena and situations which are matters of common knowledge, may not be made the subject for expert testimony." *Collins v. Zediker*, 421 Pa. 52, 53, 218 A. 2d 776 (1966). Whenever "descriptive language is adequate to convey to the jury the precise facts upon which it can apply its experience" (*Huck-Gerhardt Co. v. Kendall*, 189 Pa. Superior Ct. 126, 149 A. 2d 169 (1959)), the resolution of those facts is within the province of the jury and expert testimony on the subject is inadmissible. *Collins*, supra, at 53-54; *Burton v. Horn & Hardart Baking Co.*, 371 Pa. 60, 88 A. 2d 873 (1952). The rationale for such a rule is found in Justice MUSMANNO'S caveat: "Jurors are humans and are impressed by scientific talk even though, upon profound reflection, they could realize that in the particular field under discussion they are as much at home as the scientist." *Collins*, supra, at 55.

Appellant contends "that the jury can benefit by the offered testimony of the expert who actually saw the pool . . . . The jury didn't see the diving trench, the board, the water and indeed the pool. They cannot know what the expert here knows." The most common manner in which a jury learns what a witness knows is through the witness's power of recall and description of details. Several of appellant's witnesses described the pool and its construction. Further the expert gave ample testimony on the details of construction; the slanted sides of the pool, the narrow and small diving trench, the spring coil diving board. After presentation of these facts, the only remaining issue was whether a pool so constructed was dangerous. This is not a case in which necessity requires the admission of expert testimony because the jury on its own cannot intelligently consider and determine the question at issue. *Cooper v. Met. Life Ins. Co.*, 323 Pa. 295, 186 A. 125 (1936).

It was for the jury to apply its experience to the instant facts to reach a conclusion on the issue.

Appellant cites *Cummings v. Nazareth Borough,* 427 Pa. 14, 233 A. 2d 874 (1967), as controlling. *Cummings* held admissible expert evidence relating to "custom, usage and design respecting depth requirements of water . . ." at 21; that is, the court, within its discretion, allowed testimony on technical details used in the design of pools that were helpful to the jury in reaching its decision in the case. In the instant case, the proffered testimony concerned the "hazardous nature" of the pool, not technical data. While it may have been permissible to ask the witness further questions relating to the design of the pool, counsel for appellant was not permitted to ask questions calling for a legal conclusion. Whether the pool was hazardous was an attempt to elicit just such a conclusion.

The judgment is affirmed.