## Gnan v. Schmidt

*Nicholas Lorenzo, Jr.,* for plaintiffs.
*John T. Pion,* for defendant.

ROOF, *P.J.,* October 26, 1996—Presently before the court for consideration is a motion for summary judgment filed by defendant Schmidt.

## I. PROCEDURAL HISTORY

On September 23, 1992, Benjamin C. Gnan, executor of the estate of Alice C. Gnan, and Benjamin C. Gnan, individually, and Christine Gerg, individually, filed a complaint against Schmidt setting forth a cause of action for wrongful death at Count One; a cause of action for survival at Count Two; and a cause of action for infliction of emotional trauma and distress to Benjamin

C. Gnan and Christine Gerg at Count Three. At issue in Schmidt's motion for summary judgment is the cause of action alleged to have arisen as a result of infliction of emotional distress and trauma as set forth in Count Three of plaintiffs' complaint.

On October 27, 1992, defendant filed a preliminary objection in the nature of a demurrer claiming that Gnan and Gerg failed to set forth a cause of action for infliction of emotional distress and trauma in Count Three of their complaint. By order of court dated March 1, 1993, and entered of record March 3, 1993, the trial court, per then President Judge Gordon J. Daghir, denied Schmidt's preliminary objection. Thereafter, Schmidt filed his answer and new matter to the complaint on March 15, 1993. Generally, the answer denies negligence on the part of Schmidt and, by way of new matter, raises the affirmative defenses of the statute of limitations and failure to state a cause of action. On May 6, 1993, the plaintiffs filed their reply to Schmidt's new matter.

The plaintiffs filed their certificate of readiness on June 25, 1996, and exceptions to the certificate of readiness were presented by the defendant on July 3, 1996. Order of court dated July 11, 1996, and entered July 12, 1996, recognized the parties' agreement to remove the case from the pending trial list for a period of 45 days. On August 22, 1996, defendant filed his motion for summary judgment and plaintiffs' response to the same was filed on September 16, 1996. Argument on the motion was held September 27, 1996, and the court is in receipt of Schmidt's brief in support of summary judgment and plaintiffs' brief in opposition to summary judgment.

## II. FACTUAL BACKGROUND

Plaintiffs' complaint alleges a cause of action for wrongful death, survival and infliction of emotional distress and trauma arising out of the death of Alice A. Gnan (decedent) on December 29, 1990. The complaint generally alleges that in the fall of 1989 the decedent was experiencing joint pain and tenderness in her knees. Within several months of onset, decedent suffered pain, stiffness and edema in her joints and, particularly, in her hands, elbows, shoulders, ankles, neck and spine. (Plaintiffs' complaint, paragraph 6.) In January 1990, decedent was diagnosed as suffering from rheumatoid arthritis. (Plaintiffs' complaint, paragraph 7.) The decedent was referred to an arthritis specialist in March of 1990 but, despite institution of drug therapy on a trial basis, the decedent did not improve. (Plaintiffs' complaint, paragraph 8.) Plaintiffs allege that upon failure of other medications to control the symptoms of rheumatoid arthritis, a regimen of the drug methotrexate was prescribed by Schmidt on September 19, 1990, with monitoring to occur by laboratory testing and follow-up visits. (Plaintiffs' complaint, paragraph 9.) While decedent's joint pain improved, other symptoms/side effects from the medication began to appear within four to six weeks and the methotrexate was temporarily suspended near the end of October 1990. (Plaintiffs' complaint, paragraph 10.) Within a week of suspending the methotrexate, the prescription was resumed with the approval of Schmidt, and the prescription continued through December 5, 1990, during which time decedent's symptoms worsened. (Plaintiffs' complaint, paragraph 10.)

On December 9, 1990, decedent was admitted to the Andrew Kaul Memorial Hospital and alleged to be suf-

fering from probable methotrexate-induced liver toxicity. (Plaintiffs' complaint, paragraph 11.) Schmidt prescribed further treatment but decedent's condition continued to worsen, and she was transferred to Geisinger Medical Center on December 12, 1990, with an admitting diagnosis of "pancytopenia secondary to methotrexate," secondary to acute renal failure, liver function abnormality, coagulopathy, colitis, and other symptoms. (Plaintiffs' complaint, paragraph 12.) Despite further aggressive therapies, the decedent died December 29, 1990. (Plaintiffs' complaint, paragraph 13.) An autopsy of the decedent revealed a final diagnosis of "history of methotrexate toxicity," amongst other findings. (Plaintiffs' complaint, paragraph 14.)

Negligence is alleged on the part of Schmidt based upon allegations of both omission and commission in prescribing the drug methotrexate, failure to perform sufficient laboratory testing or monitoring decedent's physical condition; failure to diagnose and/or recognize toxicity symptoms; failure to suspend prescription; failure to provide proper therapy; failure to secure medical consultation; and, failure to warn decedent and her family of side effects of the prescription.

As above mentioned, the complaint sets forth actions for wrongful death, survival, and infliction of emotional trauma and distress. Only the latter cause of action is addressed in Schmidt's motion for summary judgment. Both Gnan and Gerg seek damages for infliction of emotional trauma and distress based upon allegations that each witnessed a discrete and identifiable traumatic event, *i.e.,* the death of the decedent from fungal septicemia caused by methotrexate toxicity (plaintiffs' complaint, paragraph 28), and experienced sensory and contemporaneous observance of injuries to the decedent. (Plaintiffs' complaint, paragraphs 25 and 26.) As a result

of the events, Gnan and Gerg allege severe and continuing injuries in the nature of stress, anxiety, depression/extreme sadness, and sleep disturbances. Gerg also alleges severe and continuing injuries in the nature of eating disturbances, work loss and loss of time with family. (Plaintiffs' complaint, paragraphs 29 and 30.)

Gnan avers that he accompanied decedent on all office visits to Schmidt at which time the drug methotrexate was prescribed (plaintiffs' complaint, paragraph 25), and Gerg alleges that she saw decedent taking the methotrexate as prescribed by Schmidt. (Plaintiffs' complaint, paragraph 26.) Both plaintiffs aver that they saw decedent on a regular basis during hospitalization and witnessed the worsening of decedent's condition. (Plaintiffs' complaint, paragraph 27.)

In response to interrogatories directed to Gerg by Schmidt, Gerg notes that following her mother's death, she began suffering from extreme emotional trauma, and Dr. Hackett prescribed nerve medication to be taken on an as-needed basis. (See Gerg's response to Schmidt's interrogatories, interrogatory no. 21, filed July 8, 1993.) In response to a similar interrogatory, Gnan notes that several months following his wife's death, he was treated by Dr. Hackett for pneumonia caused by a generally weakened, run-down state of health. (See Gnan's response to Schmidt's interrogatories, interrogatory no. 21, filed July 8, 1993.)

Schmidt, in his motion for summary judgment, argues that there is no genuine issue as to any material fact with respect to Gnan's and Gerg's claim for negligent infliction of emotional distress.[1]

---

1. Plaintiffs' complaint at Count Three sets forth a cause of action entitled "infliction of emotional trauma and distress." Defendant's motion for summary judgment identifies the cause of action as one

By virtue of the nature of the proceedings as to alleged "negligence" on the part of Schmidt, and based upon the nature of argument presented by counsel both orally and in their briefs, the court proceeds on the basis that the cause of action identified in Count Three is one of negligent infliction of emotional distress and not outrageous (or intentional) infliction of emotional distress. That stated, Schmidt asserts that accepting the facts as established in all pleadings and discovery, Gnan and Gerg have failed to set forth a cause of action for negligent infliction of emotional distress on the basis that each has failed to demonstrate a manifestation of physical injury or harm and each has failed to causally relate their emotional distress to the alleged negligent act through expert testimony. (See Schmidt's motion for summary judgment, paragraphs 4 and 5.)

## III. STANDARD FOR REVIEWING SUMMARY JUDGMENT MOTION

Pa.R.C.P. 1035.2 provides as follows:

"After the relevant pleadings are closed, but within such time as to not unreasonably delay trial, any party may move for summary judgment in whole or in part as a matter of law."

---

for "negligent" infliction of emotional distress as opposed to "outrageous conduct causing severe emotional distress." The two causes of action are separate and distinct and differ with respect to the necessity of expert medical confirmation of the distress. See *Krysmalski by Krysmalski v. Tarasovich,* 424 Pa. Super. 121, 622 A.2d 298 (1993), as regards negligent infliction of emotional distress and compare to *Kazatsky v. King David Memorial Park Inc.,* 515 Pa. 183, 527 A.2d 988 (1987), as relates to outrageous conduct causing severe emotional distress, section 46 of the Restatement (Second) of Torts. The distinction will be hereinafter discussed in further detail.

In considering whether to grant summary judgment, the record must be examined in a light most favorable to the non-moving party, the plaintiffs herein. *Overly v. Kass,* 382 Pa. Super. 108, 554 A.2d 970 (1989). Summary judgment is to be entered only in those cases that are clear and free from doubt, where the uncontroverted allegations of the pleadings and the other permissible materials filed in support of and in opposition to the motion reveal that there is no genuine issue as to a material fact and that the moving party is entitled to judgment as a matter of law. *Krause v. Great Lakes Holdings Inc.,* 387 Pa. Super. 56, 563 A.2d 1182 (1989), *appeal denied sub nom., Krause v. Penn Pocahontas Coal Co.,* 524 Pa. 629, 574 A.2d 70 (1990).

## IV. DISCUSSION

A. Whether defendant is entitled to summary judgment on the basis of Gnan's and Gerg's failure to establish any physical manifestation of harm.

Schmidt submits that, as a matter of law, Gnan and Gerg have failed to satisfy the elements necessary to sustain a cause of action of negligent infliction of emotional distress. Specifically, Schmidt argues that these plaintiffs have failed to provide any evidence of physical manifestation of their emotional distress. We must distinguish between the threshold status necessary to maintain a claim for negligent infliction of emotional distress and whether the injury claimed is compensable. This distinction was aptly set forth by Judge Montemuro in *Love v. Cramer,* 414 Pa. Super. 231, 606 A.2d 1175 (1992), as follows:

"In Pennsylvania, a cause of action for negligent infliction of emotional distress depends upon three factors:

"(1) Whether plaintiff was located near the scene of the accident as contrasted with one who was a distance away from it;

"(2) Whether the shock resulted from a direct emotional impact upon plaintiff from the sensory and contemporaneous observance of the accident, as contrasted with learning of the accident from others after its occurrence; and

"(3) Whether plaintiff and the victim were closely related as contrasted with an absence of any relationship or the presence of only a distant relationship.

"*Sinn v. Burd,* 486 Pa. 146, 171, 404 A.2d 672, 685 (1979). Recovery is further limited by the requirement that the person seeking the damages must suffer physical injury as a result of actually witnessing the harm to the close relative. *Mazzagatti v. Everingham by Everingham,* 512 Pa. 266, 516 A.2d 672 (1986)." *Love v. Cramer, supra* at 234, 606 A.2d at 1177. See also, *Blanyar v. Pagnotti Enterprises Inc.,* 451 Pa. Super. 269, 271-72, 679 A.2d 790, 791 (1996).

Instantly, Schmidt does not seek summary judgment on the basis that the plaintiffs do not meet the threshold status requirements necessary to maintain a claim for negligent infliction of emotional distress. Rather, Schmidt seeks summary judgment on the basis that the plaintiffs' damage evidence does not permit recovery for two reasons: first, on the basis that there is no genuine issue of material fact as to physical manifestation of injury, and secondly, on the basis that there is no expert testimony establishing a causal link between the claimed injury and the alleged negligent act. The necessity of expert testimony will be addressed in section (B) of DISCUSSION.

Our Pennsylvania Supreme Court in *Love v. Cramer, supra,* and *Krysmalski by Krysmalski v. Tarasovich,*

424 Pa. Super. 121, 622 A.2d 298 (1993), has addressed the sufficiency of physical harm to sustain an award of damages for negligent infliction of emotional distress. In *Love,* plaintiff's decedent began experiencing problems with her health and sought treatment from her long-time treating physician, Dr. Cramer. Despite requests by the decedent's daughter as to the need for testing or hospitalization, Dr. Cramer advised that further tests and treatment were not necessary. The decedent died of heart failure. The decedent's daughter witnessed her mother's death, as a result of which she alleged severe depression, nightmares, stress and intense anxiety. The *Love* plaintiff underwent prolonged psychological treatment.

In response to plaintiff's complaint in *Love,* preliminary objections were filed by the defendant seeking to dismiss a claim for negligent infliction of emotional distress. In *Love,* the preliminary objections went to both the status of the plaintiff's ability to maintain the cause of action as well as the sufficiency of the complaint in averring physical harm. While recognizing that a plaintiff must allege physical harm to sustain an action for negligent infliction of emotional distress, the court in *Love* went on to note that "[t]he amount of harm that must be alleged, however, is not as clear." *Id.* at 238, 606 A.2d at 1178. In examining plaintiff's complaint in *Love,* the court referenced that portion of the complaint averring that as a result of the negligence of the defendant, the plaintiff suffered extreme mental and emotional anguish and distress causing symptoms of severe depression, nightmares, stress and anxiety, requiring psychological treatment. *Id.* at 238-39, 606 A.2d at 1179. The *Love* court determined that such allegations were sufficient physical manifestations of emotional suffering. *Id.* at 238, 606 A.2d at 1179.

Instantly, each plaintiff (Gnan and Gerg) has alleged severe and continuing injuries in the nature of stress and intense anxiety, depression and extreme sadness, and sleep disturbances as a result of the alleged negligent acts. If these types of symptoms constitute physical manifestations of emotional suffering to survive the preliminary objections in *Love,* we see no reason to find differently in a situation where the same issue is raised by summary judgment motion. The testimony of Gnan and Gerg as to their physical symptoms creates a fact to be addressed by the fact-finder. Schmidt argues that the plaintiff in *Love* sought psychological treatment, whereas the plaintiffs in the case sub judice did not.[2] While the lack of psychological treatment may be a matter weighed by the fact-finder, the fact that the plaintiffs did not seek psychological treatment does not alter the existence of physical manifestation of emotional suffering.

In *Krysmalski, supra,* the issue presented itself to the Superior Court on defendant's post-trial motions. The defendant alleged trial error in allowing the plaintiff to recover damages for negligent infliction of emotional distress where the trial evidence failed to establish that plaintiff suffered physical harm in conjunction with her emotional distress claim. *Id.* at 128, 622 A.2d at 302.

---

2. While plaintiffs herein did not undergo psychological evaluation, a review of their reply to interrogatories indicates that each plaintiff sought medical attention subsequent to the death of their wife/mother. Gnan was treated by Dr. Hackett for pneumonia caused by a generally weakened, run-down state of health. (See Gnan's response to Schmidt's interrogatories, interrogatory no. 21, filed July 8, 1993.) Gerg also sought medical treatment and was prescribed nerve medication by Dr. Hackett to be taken on an as-needed basis for her emotional trauma. (See Gerg's response to Schmidt's interrogatories, interrogatory no. 21, filed July 8, 1993.)

The plaintiff in *Krysmalski* heard the commotion of an accident in a supermarket parking lot and ran to the accident scene and observed her injured children. There was evidence at trial that her observation of the accident affected her "noticeably and severely." *Id.* at 134, 622 A.2d at 305. Plaintiff's husband testified that she was unstable and distraught and a police officer testified that she was in a "hysterical state" when he arrived on the scene. *Id.* The plaintiff herself was not available to testify. Based on this evidence alone a jury returned a verdict in favor of the plaintiff/mother and the Superior Court of Pennsylvania dismissed the defendant's argument that failure to suffer physical harm in conjunction with plaintiff's emotional distress claim required overturning of the jury verdict. The teaching of *Krysmalski* is either that physical harm/physical manifestations are no longer required in conjunction with an emotional distress claim or that evidence that one is "noticeably and severely" affected, "unstable and distraught," and is in a "hysterical state" are sufficient physical manifestations of injury.

Accordingly, the court finds *Krysmalski* in conjunction with *Love* constitute sufficient authority to deny Schmidt's motion for summary judgment on the argument that plaintiffs herein have failed to establish physical manifestations of injury to support a claim for negligent infliction of emotional distress.[3]

B. Whether defendant is entitled to summary judgment on the basis that plaintiffs have failed to produce expert testimony of causation between a negligent act and the harms alleged as suffered by the plaintiffs.

---

3. Further, the record consists of affidavit of Christine Gerg describing nightmares, loss of weight, loss of sleep and depression and sadness.

Schmidt claims that plaintiffs' failure to produce expert testimony establishing a causal connection between his alleged negligence and the resultant harm to Gnan and Gerg requires, as a matter of law, that the claim for negligent infliction of emotional distress be dismissed. Schmidt in his brief sets forth a number of appellate cases requiring medical testimony to establish causal connection between an act and an injury in those instances where causation does not appear obvious. Gnan and Gerg argue that this case is guided by the opinion of our Superior Court in *Krysmalski, supra,* which provides that medical evidence is not required in an action for damages for negligent infliction of emotional distress. *Krysmalski* clearly stands for the principle set forth by Gnan and Gerg.

In *Krysmalski,* the Superior Court was required to determine whether a negligent infliction of emotional distress claim failed, as a matter of law, because medical evidence was not introduced to substantiate the claim. The court in *Krysmalski,* in denying the defendant's allegation of error, stated the following:

"This argument fails for the simple reason that medical evidence is not required in an action for damages for negligent infliction of emotional distress. Our Supreme Court has held that where a bystander witnesses injury to a close relative, the contemporaneous observance and close relationship guarantee the veracity of the claim. *Kazatsky v. King David Memorial Park,* 515 Pa. 183, 527 A.2d 988 (1987). The medical proof requirement was intended to buttress the requirement of proof of outrageous conduct in the context of intentional infliction of emotional distress claims. *Id.* In contrast, the *Kazatsky* court noted that it 'endorsed an objective

standard for the recovery of damages which limited recovery for serious mental distress to situations where a reasonable person normally constituted would be unable to adequately cope with the mental distress engendered by the circumstances of the event.' *Id.* at 193-94, 527 A.2d at 993." *Krysmalski, supra* at 134-35, 622 A.2d at 305.

*Krysmalski* distinguishes between negligent infliction of emotional distress claims and intentional infliction of emotional distress claims, the latter of which was prevalent in *Kazatsky v. King David Memorial Park Inc.,* 515 Pa. 183, 527 A.2d 988 (1987). In fact, the court in *Krysmalski* went on to state that, "Our research discloses no Pennsylvania case which requires medical evidence to support a negligent infliction claim." *Id.*

As such, *Krysmalski* would appear to defeat Schmidt's argument that medical evidence of causation is required in the case sub judice unless *Krysmalski* is factually distinguishable from the facts of the case sub judice. Initially, we note that the plaintiff's mother in *Krysmalski* met the factors giving her status to initiate a cause of action for negligent infliction of emotional distress, *i.e.*, (1) she was located near the scene of the accident as contrasted to one who is a distance away, (2) the shock resulted from direct emotional impact upon the plaintiff from the sensory and contemporaneous observance of the accident, as contrasted with learning of the accident from others, and (3) plaintiff/mother and the victims were closely related, as contrasted with an absence of any relationship or the presence of only a distant relationship. See *Sinn v. Burd,* 486 Pa. 146, 170, 404 A.2d 672, 685 (1979); *Love v. Cramer, supra* at 234, 606 A.2d at 1177. As hereinabove noted, Schmidt does not seek summary judgment on the basis that Gnan and Gerg do not meet the status requirements just im-

mediately stated.[4] The status of Gnan and Gerg to maintain the action is also supported by *Love.*

The question remains, thus, as to whether *Krysmalski* was intended to eliminate the need for expert testimony in all negligent infliction of emotional distress claims or only in those claims where there was more immediacy between the alleged negligent act and the observation of the results of the act. We do not believe that by determining that medical evidence was not required in an action for damages for negligent infliction of emotional distress that the court in *Krysmalski* intended such fine distinctions.

At oral argument, it was argued on behalf of Schmidt that expert testimony is necessary to enable the jury to distinguish what would be "normal" depression and physical manifestations emanating therefrom as a result of death from depression and physical manifestations occurring as a result of an alleged negligent act. We believe that this argument misses the point. It is not a question of whether Gnan and Gerg would have reacted in the same or different manner had their wife/mother's death not been preceded by a negligent act. Rather, the question is whether the alleged negligent act caused emotional distress supported by physical manifestations. In pain and suffering claims, we do not require expert testimony to differentiate whether one's pain and suffering would be different had they, for example, suffered a broken leg where there was no preceding negligence.

---

4. Reference is made to Schmidt's motion for summary judgment which has as its underlying basis, at paragraph six, that there is a lack of evidence as to "physical manifestation" and that there is no competent medical evidence to support the claim. Nowhere in the summary judgment motion does Schmidt claim that Gnan and Gerg do not meet the factors set forth in *Sinn v. Burd* so as to maintain a negligent infliction of emotional distress claim.

If the alleged negligent act is found to exist and if the emotional distress and physical manifestations are found to have been caused by the negligent act, then, in that event, the plaintiff can recover. The fact that their grief/depression/emotional distress may have been the same even in the absence of a negligent act is not at issue. Certainly, if the jury finds in the instant case that the defendant was negligent and his negligence brought about the manner of death of the plaintiffs' decedent, the death was untimely and the negligent act created different circumstances than would have otherwise confronted the plaintiffs had their wife and mother succumbed to a death not preceded by the claimed negligence of others.

Finally, expert testimony is admissible only when it is necessary to assist the jurors in subject matters beyond the scope of their knowledge and experience. *Reardon v. Meehan,* 424 Pa. 460, 227 A.2d 667 (1967); *Steele v. Shepperd,* 411 Pa. 481, 192 A.2d 397 (1963); *Bolus v. United Penn Bank,* 363 Pa. Super. 247, 525 A.2d 1215 (1987). To allow otherwise would be to allow jurors to be impressed with scientific matters when common sense would serve as well. *Collins v. Zediker,* 421 Pa. 52, 218 A.2d 776 (1966); *Maholland v. Bird,* 230 Pa. Super. 431, 326 A.2d 528 (1974); see generally, Fisanick, *Pennsylvania Evidence,* chapter 9, section 9-2, pp. 126-27 (1987). Our Supreme Court in *Kazatsky* also recognized that "concerns over proof of causation were found to be unjustified in the area of bystander recovery for emotional distress . . ." in distinguishing negligent infliction of emotional distress claims from outrageous, causing severe emotional distress under section 46 of the Restatement (Second) of Torts. *Id.* at 194, 527 A.2d at 993. In other words, the witnessing of an "injury to a close relative, the

contemporaneous observance and close relationship guarantee the veracity of the claim." See *Krysmalski, supra,* at 135, 622 A.2d at 305.

We hold that summary judgment cannot be granted as a matter of law on the basis of plaintiffs' failure to establish causation by medical testimony.

For the foregoing reasons, we enter the following:

## ORDER

And now, October 26, 1996, in consideration of defendant's motion for summary judgment, after oral argument thereon and consideration of legal briefs, and consistent with the foregoing memorandum opinion, it is ordered and decreed that defendant's motion for summary judgment is denied.

