**Moye v. Noss**

*Charles F. Bowers Jr.,* for plaintiffs.
*Kathleen A. Segmiller,* for defendant.

KUNSELMAN, *S.J.,* April 16, 2008—Pursuant to Pa.R.A.P. 1925(a), the court files this opinion in support of its order denying defendant Michael George Noss' motion for post-trial relief. A brief factual and procedural history of this case is as follows.

On August 2, 2004, plaintiffs Christine and Michael Moye filed a complaint alleging that the defendant was negligent in the operation of his motor vehicle, resulting in injuries to plaintiff wife. Plaintiff husband alleged damages for loss of consortium and for the payment of medical expenses for his wife. Prior to trial, the defendant stipulated to liability. A jury trial on the matter commenced on September 24, 2007, and the jury rendered a verdict on September 25, 2007 in favor of plaintiff wife in the amount of $65,000 and plaintiff husband in the amount of $5,000. At trial, the evidence revealed that on October 16, 2002, at approximately 6 p.m., plaintiff wife was driving her Lincoln Navigator on the main street in Freedom, Beaver County, Pennsylvania. (N.T. at 28-29.) She applied her turn signal and came to a stop in order to make a left-hand turn from the main street. (N.T. at 29.) While plaintiff wife was stopped due to traffic awaiting the opportunity to

make a left-hand turn, the defendant rear-ended the back of her vehicle. (N.T. at 29.)

On the date of the accident, plaintiff wife was seven months pregnant. (N.T. at 28.) She was taken to the hospital, where she complained of neck and low back pain. (N.T. at 34.) She was discharged, and went to see her family doctor, Dr. Tatum, the next day. (N.T. at 35.) Plaintiff wife further testified that she began a physical therapy regime on October 18, 2002. (N.T. at 35.) At the time of the accident, plaintiffs were joint owners of a daycare center. (N.T. at 23, 99.) Plaintiff wife served as the daycare's program director. She stated that after the accident she attempted to go back to work in her position as program director, but because of her pain it was difficult for her to perform the duties required. (N.T. at 36-37.) She further stated that she could not put in the required 30 hours per week. (N.T. at 37-38.) Plaintiff wife testified that she tried to go back to work after the accident for approximately four weeks. (N.T. at 37.) She stated that because she could not perform all of the necessary duties, she was required to promote Kara Cochran to the position of program director and to hire Kelly Harris to perform clerical duties. (N.T. at 38, 39.) She further testified that she was completely off from November of 2002 until about March of 2003. (N.T. at 41.) After she gave birth to her daughter on December 30, 2002, plaintiff wife went back to physical therapy for treatment, from March until May of 2003. (N.T. at 42-43.) She stated that she then began treatment at Sheffield Chiropractic. (N.T. at 45.) She further testified that in March of 2003, she attempted to go back to work for about 15 hours per week, and then attempted to increase her working hours to 30 hours per week in April or May

of 2003. (N.T. at 46-47.) After the birth of her third child, plaintiff wife began treating with Dr. Sisk, a chiropractor, from May 7, 2004 until August of 2005. (N.T. at 71, 73.) Plaintiffs also presented the testimony of Dr. Michael Cozza, who diagnosed plaintiff wife as suffering from "cervical, thoracic and lumbosacral strain and sprain along with low grade back pain." (Cozza deposition at 11.)

Prior to trial, the defendant retained the services of certified public accountant Lawrence P. McGrail for the purpose of reviewing the financial statements of plaintiffs' daycare business. The defendant asserted that McGrail would testify that Ms. Cochran's pay amounts remained the same prior to and after the date of the accident. Further, the defendant proposed that McGrail would testify that the additional expenses for the employees of plaintiffs' daycare were due to the continuing growth of the business. Plaintiffs then filed a motion in limine to preclude McGrail's testimony, arguing that the profits and losses of plaintiffs' business were irrelevant, and asserting that the proper method of calculating income loss in this matter was the cost of paying for replacement services. We granted plaintiffs' motion in limine on September 24, 2007, thus precluding McGrail's testimony. (N.T. at 7-8.)

After the jury reached a verdict in favor of plaintiffs, the defendant filed a timely motion for post-trial relief. In his motion, the defendant first asserted that this court abused its discretion and committed an error of law when it granted plaintiffs' motion in limine. Specifically, the defendant contended that the proposed testimony of defense expert McGrail was relevant to show that the

increased wages paid to the daycare center's employees were not causally related to the motor vehicle accident in question, but instead were the result of the growth in plaintiffs' business. Further, the defendant asserted that McGrail's testimony was both relevant and necessary to rebut plaintiff husband's testimony that he took a leave of absence from his job at the post office after the accident for the purpose of helping out at the daycare center. The defendant proposed that McGrail would testify that plaintiff husband was engaged in the operation of the daycare center prior to the accident. Additionally, the defendant argued that the trial court improperly admitted into evidence an exhibit detailing payroll records for daycare employee Kara Cochran and another exhibit setting forth a calculation of income loss claimed by plaintiff wife.

Next, the defendant contended that this court erred in permitting testimony from plaintiffs regarding plaintiff wife's income loss and inability to work. Specifically, the defendant argued that plaintiffs did not offer any testimony or evidence by a physician or chiropractor demonstrating that plaintiff wife was disabled, unable to work, or restricted as a result of the accident. Thus, the defendant argued that this court abused its discretion in allowing testimony concerning plaintiff wife's income loss due to her inability to work.

Finally, the defendant asserted that the court improperly accepted plaintiffs' supplemental point for charge regarding plaintiff wife's pre-existing condition or injury. The defendant contended that the basis for the charge was plaintiff wife's pregnancy at the time of her accident, followed by her later pregnancy. The defendant

asserted that plaintiffs offered no medical evidence to support the allegation that plaintiff wife's pregnancies affected her cervical or lumbar strain. Moreover, the defendant argues that plaintiff wife's later pregnancy in the spring of 2003 should not have been considered to be a prior physical condition. As such, the defendant asserted that the trial court erred when it charged the jury that plaintiff wife's pregnancy was a pre-existing condition that affected her injuries and/or her recovery.

We denied the defendant's motion on February 27, 2008. Judgment was then entered on the verdict as molded to add delay damages in favor of plaintiff wife in the amount of $75,309.18, and in favor of plaintiff husband in the amount of $5,000, and against the defendant. This timely appeal followed. On appeal, the defendant sets forth the following questions for review:

"(1) Whether the trial court erred when it granted plaintiffs' motion to exclude the business testimony of plaintiffs' economic expert and subsequently excluded all testimony from the defendant's economic expert?

"(2) Whether the trial court erred when it permitted the jury to consider plaintiff wife's alleged inability to work and subsequent wage loss when plaintiffs failed to produce any medical testimony causally relating plaintiff wife's alleged restrictions to the October 16, 2002 automobile accident?

"(3) Whether the trial court erred when it charged the jury on an alleged pre-exisitng condition increasing the severity of plaintiff wife's injuries based on her two pregnancies?

We shall address these issues seriatim. First, we address the defendant's contention that the court erred in excluding the testimony of the defendant's business expert. Initially, we note that:

"the grant of a new trial is a matter within the discretion of the trial court. *Kiser v. Schulte,* 538 Pa. 219, 225, 648 A.2d 1, 3 (1994). 'An abuse of discretion is not merely an error in judgment; rather it occurs when the law is overridden or misapplied, or when the judgment exercised is manifestly unreasonable or the result of partiality, prejudice, bias or ill will.' *Pilon v. Bally Engineering Structures,* 435 Pa. Super. 227, 645 A.2d 282, 285 (1994), *appeal denied,* 539 Pa. 680, 652 A.2d 1325 (1994), *rejected on other grounds in Shope v. Eagle,* 551 Pa. 360, 710 A.2d 1104 (1998)." *Majczyk v. Oesch,* 789 A.2d 717, 720 (Pa. Super. 2001).

Additionally,

" '[t]he admission or exclusion of evidence, including the admission of testimony from an expert witness, is within the sound discretion of the trial court.' *Turney Media Fuel Inc. v. Toll Bros. Inc.,* 725 A.2d 836, 839 (Pa. Super. 1999). (citation omitted) 'Thus our standard of review is very narrow; we may only reverse upon a showing that the trial court clearly abused its discretion or committed an error of law.' *Id.* (citation omitted) 'To constitute reversible error, an evidentiary ruling must not only be erroneous, but also harmful or prejudicial to the complaining party.' *Id.* (citation omitted)" *Id.* at 727.

In this case, the defendant proposed that the testimony of expert witness Lawrence P. McGrail would reveal that:

"(1) The increase in overall wages after the accident was a necessary increase in expense to support the continued growth of the daycare. There was a direct correlation between increased revenue and increased wages.

"(2) Michael Moye's absence from his employment at the post office was most likely due to a combination of assisting Christine Moye following the birth of their child in December 2002 and his activities associated with the physical expansion of the daycare center." Report by Lawrence P. McGrail, pp. 1-2.

In preparing the report, McGrail reviewed the daycare center's tax returns, the individual tax returns of the plaintiffs, the checking account information and payroll data of the business, the depositions of the plaintiffs, and other data. *Id.* at 1. Specifically, McGrail noted in his report that the additional expenses incurred by the daycare were due to the growth in revenue and number of children who utilized the daycare, and not because of additional employee expenses incurred by plaintiffs after plaintiff wife was injured. *Id.* at 2. Further, McGrail points out in his report that "[g]ross wages paid as a percentage of gross receipts had remained constant for all years of operation (2002 through 2004) and averaged 52 percent of gross receipts." *Id.* at 4. Accordingly, McGrail concluded that plaintiff wife did not incur an economic loss due to the October 16, 2002 accident.

Plaintiffs asserted that McGrail's proposed testimony was irrelevant to plaintiff wife's claim and was thus inadmissible. We agreed, and therefore granted plaintiffs' motion in limine to exclude such testimony. In *Bell v. Yellow Cab Co.,* 399 Pa. 332, 160 A.2d 437 (1960), the Pennsylvania Supreme Court discussed the probative

value of testimony regarding the plaintiff's loss of earnings, noting:

"[o]rdinarily, earnings which represent the result of combined capital and personal services is not capable of establishing the earning power of the servitor. Where, however, the business is small and the income which it produces is principally due to the personal services and attention of the owner, the earnings of the business may afford a reliable criterion of the owner's earning power. As recognized in *Offensend v. Atlantic Refining Company,* 322 Pa. 399, 404-405, 185 A. 745, 747, 'The general rule is that profits derived from a business are not to be considered as earnings and cannot be admitted as a measure of loss of earning power, but where they are almost entirely the direct result of personal management and endeavor, they are an accurate measure of earning capacity and admissible as such: *Dempsey v. City of Scranton,* 264 Pa. 495, 107 A.2d 877, and authorities cited therein; *Pietro v. Philadelphia R.T. Co.,* 298 Pa. 423, 148 A. 520.' " *Bell,* 399 Pa. at 339, 160 A.2d at 441-42.

In that case, the plaintiff and his wife owned a small pet and sport supply store in Philadelphia. The Pennsylvania Supreme Court noted:

"[t]he plaintiff, himself, was an avid sportsman and many of his patrons were persons who sought him out because of the many and various kinds of practical information and advice he could give them concerning hunting, fishing, the feeding and care of pets, repairing equipment, etc. When, because of the injuries he suffered in the accident, he was no longer able to attend to his business, it declined in the following year to the extent already stated." 399 Pa. at 339, 160 A.2d at 442.

Based upon the testimony presented, the Pennsylvania Supreme Court concluded that "the testimony justified the conclusion that the earnings from the plaintiff's small business were primarily the result of his personal attention and labor." 399 Pa. at 340, 160 A.2d at 442. Accordingly, the Supreme Court determined that in that case, the trial court did not err in permitting the testimony as a basis for determining the plaintiff's "loss of earnings and the value of the services which he was capable of performing before the accident and the extent of the limitations thereafter on his capacity to work at gainful employment." *Id.* at 340, 160 A.2d at 442.

Similarly, in *Serhan v. Besteder,* 347 Pa. Super. 11, 500 A.2d 130 (1985), the Pennsylvania Superior Court determined that where a business was small and the income produced by the business was due mainly because of the plaintiff's personal services and attention, federal and personal income tax returns were admissible to show impairment of the plaintiff's earning capacity. 347 Pa. Super. at 21, 500 A.2d at 135. In that case, the plaintiff owned a drapery business and worked as an interior decorator. The nature of her work included traveling to clients' houses for the purpose of providing design advice. In addition, the plaintiff made the draperies herself, and employed independent contractors to install the draperies and perform slipcover work. After she was injured in an accident, she sometimes had to sublet the work. The trial court denied her request to submit Schedule C of her federal tax return to the jury, determining that "the net earnings of the business was not an accurate measure of the value of plaintiff's services to the business." 347 Pa. Super. at 17, 500 A.2d at 133.

The Superior Court disagreed, noting that "[i]n many cases, the appellate courts of this Commonwealth have held that where a business is small and the income which produces it is due principally to the personal services and attention of the owner, the net profits of the business may afford a reliable measure of the owner's earnings." *Id.* The *Serhan* court noted that:

"in *Faber v. Gimbel Brothers,* 264 Pa. 1, 107 A. 222 (1919), our Supreme Court held that evidence of earnings from a partnership of which plaintiff was a member both before and after the accident was admissible to show decreased earning power as a result of the injury. The court in *Faber* considered the fact that both partners devoted their entire time to the business and the nominal capital investment in the auto repair enterprise as factors relevant to its decision.

" 'The business in question in this case was a small partnership which required the full time and attention of the two partners and employed no other workers. As in *Faber,* the business was a repair service, and therefore, required little capital investment. We conclude that this case is within the exception to the general rule preventing admission of evidence of earnings from a business to prove impaired earning capacity.' 272 Pa. Super. at 226-27, 414 A.2d at 1090-91." 347 Pa. Super. at 18, 500 A.2d at 134.

In determining that the plaintiff's business fell within the parameters of *Bell v. Yellow Cab Co.,* 399 Pa. 332, 160 A.2d 437 (1960), the Superior Court noted:

"Miss Serhan's business was very small in scope. In 1977 she grossed only $11,805. Her profit was $4,237.

Her capital investment involved principally the purchase and installation of sewing machines in her basement. Virtually, the entire business was based on her labors. She acted as an interior decorator and visited customers in their homes to solicit contracts, and before the accident she made all the drapes herself. She used independent contractors for installation and slipcover work only. The fact that she had the expense of subletting drapery work after the accident was a clear measure of a portion of her damages and proof of the value of her services to the business, not a reason to deny her a recovery. Under those circumstances, the tax records were admissible to prove the amount of the loss. . . . An appropriate instruction regarding lost earnings should have been given." *Serhan,* 347 Pa. Super. at 19, 500 A.2d at 134. (citation omitted)

Moreover, the Superior Court held that the plaintiff provided sufficient evidence demonstrating a link between the injuries sustained in the accident and the loss of her earning capacity. *Id.* at 20, 500 A.2d at 134. As such, the Superior Court determined that the trial court erred in refusing to allow the plaintiff to admit her tax returns into evidence, as she had demonstrated impairment to earning capacity. *Id.* at 21, 500 A.2d at 135.

In the case sub judice, however, the profits and losses of plaintiffs' business are not a proper measure of plaintiff wife's loss of income. Here, there was no proposed evidence demonstrating that the profits or losses of the center were dependent mostly upon the actions and services of the plaintiffs. Defense expert McGrail's report sets forth that the daycare employed several workers at a time, noting, for example, that in the first quarter of 2003, there were 12 employees earning over $300. Report

by Lawrence P. McGrail, p. 4. There was no proposed testimony demonstrating that the profits of the daycare were mainly the result of the sole efforts of plaintiffs, nor did McGrail's report state this. Accordingly, we did not err in refusing McGrail's testimony regarding the increase in revenue of plaintiffs' daycare business, as it was irrelevant.

Moreover, this court did not err in refusing to allow McGrail to testify regarding Mr. Moye's time off from work. The defendant asserts that he should have been permitted to introduce into evidence testimony regarding the amount of time plaintiff husband took off from his employment at the post office prior to and after the accident. The defendant proposed that the testimony was relevant to demonstrate that plaintiff husband did not take a leave of absence from his position at the post office to help with the daycare business solely because of his wife's accident.

We note that plaintiff husband testified that after his wife's accident, he took a six-month leave of absence from his job as a clerk at the post office to help with the daycare business. (N.T. at 104.) We note that defense counsel cross-examined plaintiff husband regarding the number of days he was absent from work at the post office prior to plaintiff wife's accident. (See N.T. at 109-11.) Further, the amount of days taken off by plaintiff husband is not a subject matter requiring expert testimony. In Pennsylvania,

"[i]t has long been established that expert opinion testimony is proper only where formation of an opinion on a subject requires knowledge, information, or skill beyond what is possessed by the ordinary juror. *Com-*

*monwealth v. Seese,* 512 Pa. 439, 517 A.2d 920 (1986). 'Phenomena and situations which are matters of common knowledge, may not be made the subject for expert testimony.' *Id.* at 442, 517 A.2d 920, citing *Collins v. Zediker,* 421 Pa. 52, 53-56, 218 A.2d 776, 777-78 (1966). 'Expert testimony is inadmissible when the matter can be described to the jury and the condition evaluated by them without the assistance of one claiming to possess special knowledge upon the subject.' *Id.,* citing *Burton v. Horn and Hardart Baking Co.,* 371 Pa. 60, 88 A.2d 873, 63 A.L.R.2d 731 (1952)." *Commonwealth v. Carter,* 403 Pa. Super. 615, 618, 589 A.2d 1133, 1134 (1991), *appeal denied,* 528 Pa. 621, 597 A.2d 1151 (1991).

Here, the amount of time taken off by plaintiff husband is a matter of common knowledge that could easily be described to and evaluated by the jury without the testimony of an expert. As such, the court did not err in refusing to permit the defendant's expert to testify regarding plaintiff husband's time sheets to the jury.

The defendant also complains that the exclusion of all testimony by McGrail prevented him from producing any rebuttal testimony regarding plaintiffs' exhibits I and L. Exhibit I is a compilation of Kara Cochran's payroll records, exhibit L, entitled "cost of hiring substitutes," is a compilation of the mathematical calculations demonstrating plaintiffs' income loss for the extra pay associated with promoting Kara Cochran and hiring Kelly Harris. The defendant asserts that these documents were never produced during discovery nor identified in plaintiffs' pretrial statement. As such, the defendant claims he was prejudiced by the trial court's exclusion of McGrail's testimony. In response, plaintiffs note that

section VII, 7 of their pretrial statement lists "Children's Palace Daycare Center payroll records" as a potential set of documents to be introduced into evidence. Further, plaintiffs argue that they provided the defendant with copies of Kara Cochran's checks showing her net pay in advance, and further contend that the only additional information was the gross pay and number of hours worked per pay period. As to exhibit L's admittance into evidence, plaintiffs contend that the jury would have been exposed to the same information if plaintiff wife had simply performed the calculations on a chalkboard while testifying.

We note: "decisions on admissibility are within the sound discretion of the trial court and will not be overturned absent an abuse of discretion or misapplication of law. In addition, for a ruling on evidence to constitute reversible error, it must have been harmful or prejudicial to the complaining party." *Geise v. Nationwide Life and Annuity Company of America,* 939 A.2d 409, 417 (Pa. Super. 2007), quoting *Hutchinson v. Penske Truck Leasing Co.,* 876 A.2d 978, 984 (Pa. Super. 2005), *affirmed,* 592 Pa. 38, 922 A.2d 890 (2007). (citation omitted)

Plaintiff wife testified regarding Kara Cochran's increase in pay and Kelly Harris' salary beginning in November of 2002; she also testified regarding deductions taken from her wage loss claim. (N.T. at 60-65.) Defense counsel cross-examined plaintiff wife extensively regarding Kara Cochran's salary and paychecks. (See N.T. at 79-84.) Here, the defendant was not prejudiced by the admittance into evidence of plaintiffs' exhibits I and L. According to plaintiffs, the defendant had received Kara Cochran's paychecks in advance of trial, and thus had

knowledge of what was contained in the payroll records. Further, plaintiffs provided the defendant with the amount of income loss claimed by plaintiff wife in advance of trial. The fact that plaintiffs did not give the defendant a chart of the exact calculations in advance is of no moment.

Next, we will address defendant's assertion that we erred in allowing the jury to consider plaintiff wife's inability to work and her wage loss claim. In this case, the defendant argues that plaintiffs presented no medical testimony to link the accident in question with plaintiff wife's inability to work at the same level as prior to the accident. Thus, the defendant asserts that this court should have excluded all testimony regarding plaintiff wife's loss of earning capacity. In Pennsylvania,

"[a]lthough in certain situations involving physical injury, it is possible for a jury reasonably to infer causation from the circumstances of an accident or occurrence, see *e. g., Illingworth v. Pittsburgh Railways Co.,* 331 Pa. 369, 200 A. 89 (1938); *Fenstermaker v. Bodamer,* 195 Pa. Super. 436, 171 A.2d 641 (1961), it is generally acknowledged that the complexities of the human body place questions as to the cause of pain or injury beyond the knowledge of the average layperson. See *Lambert v. Soltis,* 422 Pa. 304, 221 A.2d 173 (1966); *Smith v. Yohe,* 412 Pa. 94, 194 A.2d 167 (1963). For a plaintiff to make out his cause of action in such a case, therefore, the law requires that expert medical testimony be employed. In addition to its bearing on whether or not the defendant's conduct was negligent, such testimony is needed to establish that the injury in question did, with a reasonable degree of medical certainty, stem from the negligent act

alleged. *Commonwealth v. Hamilton,* 459 Pa. 304, 329 A.2d 212 (1974); *Houston v. Cannon-Bowl Inc.,* 443 Pa. 383, 278 A.2d 908 (1971)." *Hamil v. Bashline,* 481 Pa. 256, 267, 392 A.2d 1280, 1285 (1978).

Further, "[i]t is well established that the fact and the extent of the impairment are jury questions, . . . and that no expert testimony is required in this jurisdiction to show loss of earning capacity, *Goodhart v. Pennsylvania RR Co.,* 177 Pa. 1, 35 A. 191 (1896) but where expert testimony is preferred and relevant it is admissible." *Gary v. Mankamyer,* 485 Pa. 525, 530, 403 A.2d 87, 90 (1979). (citation omitted) Thus, under the law, there is no requirement that plaintiffs present expert medical testimony linking plaintiff wife's inability to work with the accident in question; *Hamil* requires that a plaintiff present expert medical testimony to show only that the injuries sustained stem from the accident in question.

The testimony of record reveals that plaintiff wife was taken to the hospital immediately following the accident, where she complained of neck and low back pain. (N.T. at 34.) Plaintiff wife testified that although she attempted to get back to work after the accident, she stated that she was in so much pain that she could only stay at work for a couple of hours at a time, that she had a hard time sitting on the floor with the children and working on the computer, and that she was unable to do the shopping for the daycare center. (N.T. at 37.) She stated that immediately after the accident she tried to go back to work for about four weeks. *Id.* As such, plaintiff wife testified that she was unable to work the required 30 hours per week as program director of the daycare center. (N.T. at 37-38.) She further stated that she was off work com-

pletely from November of 2002 until March of 2003. (N.T. at 41.) Dr. Michael Sisk, a chiropractor, treated plaintiff wife from May 7, 2004 until November of 2004. (Sisk deposition at 6, 12.) He testified that he found "decreases in the cervical range of motion, in flexation, and extension with pain response, and also in the lumbar area on rotation and extension." (Sisk deposition at 8.) He diagnosed her with a "cervical sprain/strain, a lumbar sacral sprain/strain, myofacial syndrome and muscle spasm." (Sisk deposition at 9-10.) Plaintiff wife was treated by Dr. Sisk again between March and August of 2005. (Sisk deposition at 13-14.) Dr. Sisk specifically testified that plaintiff wife's injuries were related to the October 16, 2002 car accident. (Sisk deposition at 15.) Additionally, plaintiffs presented the deposition testimony of Dr. Michael Cozza, a board certified physician in physical medicine and rehabilitation. (Cozza deposition at 5.) Dr. Cozza testified that as of November 10, 2004, when he saw plaintiff wife, plaintiff wife suffered from "[s]tatus post motor vehicle accident with cervical, thoracic and lumbosacral strain and sprain with continued low grade back pain." (Cozza deposition at 11.) Further, Dr. Cozza testified that plaintiff wife's pain was aggravated by bending, carrying, sitting on the floor and prolonged activity. (Cozza deposition at 9-10.)

Thus, based on the foregoing, plaintiffs clearly presented expert medical testimony establishing that plaintiff wife was indeed injured, and that plaintiff wife's injuries were the result of the October 16, 2002 car accident. As such, plaintiffs met the expert testimony requirement linking the injury to the incident as set forth in *Hamil, supra.* Further, as set forth *supra,* plaintiffs presented testimony from plaintiff wife, Dr. Sisk and Dr.

Cozza demonstrating that plaintiff wife's injuries included neck and back pain that hindered her performance of her duties as the director of plaintiffs' daycare center. Accordingly, the court did not err in permitting the jury to consider testimony and evidence regarding plaintiff wife's loss of earning capacity.

Finally, the defendant contends that the trial court erred in instructing the jury that the defendant was responsible for all damages caused by the accident in question. The defendant alleges that in effect, the trial court improperly charged the jury regarding her two pregnancies acting as a pre-existing condition that aggravated her injuries. In Pennsylvania,

"[e]rror in a charge is sufficient ground for a new trial if the charge as a whole is inadequate or not clear or has a tendency to mislead or confuse rather than clarify a material issue. *Id.* [*Stewart v. Motts,* 539 Pa. 596, 654 A.2d 535 (1995)] (citing *Glider v. Commonwealth Dept. of Hwys.,* 435 Pa. 140, 255 A.2d 542, 547 (1969)); see also, *Price v. Guy,* 558 Pa. 42, 735 A.2d 668, 670-71 (1999) ('[E]rror will be found where the jury was probably misled by what the trial judge charged or where there was an omission in the charge.'). A charge will be found adequate unless 'the issues are not made clear to the jury or the jury was palpably misled by what the trial judge said or unless there is an omission in the charge which amounts to a fundamental error.' *Stewart,* 654 A.2d at 540 (quoting *Voitasefski v. Pittsburgh Rys. Co.,* 363 Pa. 220, 69 A.2d 370, 373 (1949)). In reviewing a trial court's charge to the jury we must look to the charge in its entirety. *Stewart,* 654 A.2d at 540. Because this is a question of law, this court's review is plenary. *Naylor*

*v. Township of Hellam,* 565 Pa. 397, 773 A.2d 770, 773 (2001)." *Quinby v. Plumsteadville Family Practice Inc.,* 589 Pa. 183, 197, 907 A.2d 1061, 1069-70 (2006).

Further,

"[t]he principle is firmly established that a tort-feasor is liable for all direct and proximate consequences of his unlawful act. Where the personal injuries caused by the wrongdoer aggravates an existing infirmity or disease, resulting in prolongation of the injuries and a corresponding increase in damages, compensation for such added or increased damages may be recovered. . . .

"The wrongdoer is liable for all harm caused by his negligent act though increased by an unknown physical condition, which could not have been discovered or anticipated prior to the wrongdoing." *Offensend v. Atlantic Refining Company,* 322 Pa. 399, 402-403, 185 A. 745, 746-47 (1936). (citations omitted) Here, the defendant's actions did not affect plaintiff wife's pregnancy. However, plaintiff wife's treatment for her injuries after the accident was affected by her pregnancy. When asked if plaintiff wife's course of treatment was interrupted, Dr. Sisk testified as follows:

"Yes. It was interrupted by the birth of her child. Then I guess treatment resumed, and then it was interrupted again by a second pregnancy and delivery of a child approximately six weeks prior to her entering care at this office." (Sisk deposition at 7.)

Further, Dr. Cozza testified:

"Well, first of all, when she first went into therapy, she was six and a half months pregnant and I think that limited what they could do on her. They couldn't do ultra-

sound on her or other forms of deep heating, and they had to be very careful on how they did their therapy.

"Then when she did get therapy, she got pregnant again and did not take any therapy, and I think both of these contributed to her perhaps not making the progress she might have made if she had gotten therapy earlier." (Cozza deposition at 13.)

The testimony of record revealed that plaintiff wife's pregnancy placed limitations on her ability to undergo and complete the physical therapy regimen prescribed to her by her doctor. The court charged the jury as follows:

"Damages should be awarded for all injuries caused by the accident, even if the injuries caused by the accident were more severe than could have been foreseen because of the plaintiff's prior physical condition. I remind you that the defendant can be held responsible only for the injuries or condition that you find was legally caused by the accident." (N.T. at 143.)

We note that the court did not state to the jury during its charge that plaintiff wife's pregnancy was a pre-existing condition. Clearly, the court did not mention plaintiff wife's second pregnancy and did not instruct the jury to consider it. Moreover, the court did not instruct the jury that plaintiff wife's pregnancy was affected by the accident. Instead, the court correctly charged the jury based upon the evidence of record and the appropriate standard of law that the jury should award damages for all injuries stemming from the accident, even if the jury determined that plaintiff wife's injuries were more severe than could be foreseen due to a prior condition. The court's charge was not misleading or confusing in any

way. Thus, this court properly and appropriately charged the jury with a correct statement of the law.

For the foregoing reasons, the defendant's post-trial motions were properly denied and the defendant's request for a new trial was properly refused.